THE SOUTHERN KANSAS RAILWAY COMPANY V. WAL-
TER CROKER.

DEFECTIVE TOOLS—*Personal Injury—Recovery of Damages.* While it
is the fault of the servant, if he undertakes without sufficient skill, or
applies less than the occasion requires, (*U. P. Rly. Co. v. Estes*, 37 Kas.
715,) a section man who complains of the bad condition of the tool
with which he has to work, and is promised a new and good one, and
is told to work with the defective tool until the others arrive, and
relying on such a promise, and there being no immediate danger,
does so, and is injured by the use of the defective tool, is entitled to
recover for the damages resulting. His solicitation of employment
in a certain line of work is not an assertion that he can perform the
labor with defective tools.

*Error from Allen District Court.*

THE opinion states the case.

*Geo. R. Peck, A. A. Hurd,* and *J. G. Egan,* for plaintiff
in error.

*Knight & Foust,* for defendant in error.

Opinion by SIMPSON, C.: Suit to recover damages for per-
sonal injuries received by the defendant in error in the line
of his employment as a section hand of the Southern Kansas
Railroad Company, commenced on the 12th day of July,
1886. Tried at the March term, 1887, of the district court
of Allen county, resulting in a judgment in favor of the de-
fendant in error for $2,654.88.

The defendant in error, Walter Croker, was employed as a
section hand by the railroad company in August, 1885. He
is a young man about twenty-two years of age, and before
his employment by the plaintiff in error had never worked
on any public works. From the time of his employment
until the 30th day of March, 1886, he had been engaged in
the ordinary duties of a section hand, doing all that he was
ordered to do to keep the track in good repair. On the 30th
day of March, 1886, in the afternoon, he was engaged in

breaking rock for ballast, using for that purpose a stone-hammer that weighed three and one-half pounds. The handle of the hammer was a green stick, cut from the brush adjoining the track, and was crooked. The defendant in error had complained directly to the section foreman about the handle being defective, he having been slightly injured before by the use of such a handle. The foreman told him to work with this one as it was, and that he would get good handles in a few days. He struck a blow on a limestone rock with the hammer, and a small particle of the stone struck him in the eye and destroyed its sight. In two days after the injury the eye was taken out by oculists in Kansas City. The jury, in answer to special interrogatories, found as follows:

" 1. Was the plaintiff, at the time of his employment by the defendant, a man of ordinary intelligence and information? A. Yes.

" 2. How long had the plaintiff been in the employment of the defendant at the time of the injury complained of? A. About seven or eight months.

" 3. Did the plaintiff understand what he was expected to do under his employment at the time he entered the service of the defendant? A. Yes.

" 4. How long had the plaintiff been engaged in the use of the stone-hammer in question, before the day on which he was injured? A. About three or four days.

" 5. Was the plaintiff familiar with the use of the stone-hammer in question, at the time of the injury received by him? A. Yes.

"; 6. Did the plaintiff know of all the defects, if any existed, in the handle of the hammer he was using, at the time he worked with it, and at the time of the injury he received? A. Yes.

" 7. Could the plaintiff have put a new handle in the hammer-head if he had chosen so to do? A. No.

" 8. Was the plaintiff at work for the defendant by the day, or by the month, at the time of his injury? A. By the day.

" 9. Was the work of breaking rock while in the employ of the defendant such work as the plaintiff was competent to do? A. Yes.

"10. Which one of the three handles introduced in evidence

is the one that plaintiff was using at the time a piece of the rock flew off and hit him prior to the day on which he was hurt, as alleged in this case? A. Either exhibits '2' or '3.'

"11. Were the three hammer-handles introduced in evidence, made by the workmen who were repairing the track and breaking rock with the plaintiff? [Objected.] A. Don't know.

"12. Did the foreman, Neely Frame, give the men who made the three hammer-handles in evidence, any directions as to the character of the handles that they should make? A. Don't know.

"13. Did the foreman, Neely Frame, give the men who made the handles any instructions whatever as to the length, thickness, straightness, or elasticity of the handles they were to procure? A. Don't know.

"14. How much, if anything, did you allow to the plaintiff for the services of the doctors in Kansas City? A. $50.

"15. How much, if anything, did you allow to the plaintiff for the loss of time during period of time following the injury? A. $100."

The motion for a new trial was overruled, and the exceptions saved present the questions discussed by counsel for plaintiff in error. There are only two. The first is that at the trial the defendant in error was allowed to testify, that before he entered the employment of the railroad company, in August, 1885, he had not labored on public works of any kind. It is said that this was a mere subterfuge to excuse the plaintiff's own carelessness and negligence; that the court having allowed this to go to the jury, they had license thus given them to conclude that the plaintiff was not bound to exercise ordinary care and sense in doing the work. While we doubt very much whether any importance was attached to this evidence by either the court or jury, we will discuss it as if it was an important and controlling fact in the case. Giving the plaintiff in error the benefit of the ruling in the case of *U. P. Rly. Co. v. Estes,* 37 Kas. 715, to the fullest extent, and holding that his employment as a section hand was an assertion on his part that he could break stone for ballast, and the result is that the company would not be liable for any accidental injury that happened in the line of that employment. This is upon

the theory that the company furnished him with the usual tools that were used to do such work, and that these tools were in good condition.     But his employment was not an assertion on his part that he could break rock for ballast with stone-hammers with crooked handles.     The record shows that he had complained of the hammers, and the foreman had prom-ised to procure new and better handles.     The duty of the com-pany is plainly understood to be, to furnish reasonably safe tools for doing this kind of work; these hammers were de-fective; a protest was made against their use; a promise given that good new handles would be forthcoming; and this promise was accompanied by an order "to go ahead and work with them;" the work proceeded, and the injury was the result of the use of the defective handle of the hammer.     The con-clusion is irresistible that the railroad company did not exer-cise that degree of care required by law, in furnishing proper tools with which to do the work required of the section men, and was guilty of negligence in requiring the use of defective hammers.

The other objection is confined to the answers to the seventh and tenth special questions submitted to the jury.     We do not deem these very important or influential in determining the result.     If the answers to these questions had been yes, they would not have changed the result, neither would these an-swers have been inconsistent with the general verdict of the jury.     Was it the duty of the defendant in error, under the terms of his employment, to put a new handle in the hammer-head?     If it was, the foreman ought to have ordered him to do so when he complained of the defect; but instead of that, he was told to go ahead and work with it until the new one arrived.     Again, what difference does it make who made the handles that were used?— the natural inquiry being whether or not they were reasonably adapted to their use, and were safe. We have read this record carefully, and with the exception of the evidence of the witness Lorance, there is no testimony to show that two of the handles were made by the workmen. Lorance says he made one of them, but as to the other two,

it is not disclosed who made them. The answer in this respect is truthful. However, no matter how the question is answered, we regard it as an immaterial matter, for if it was the duty of the workmen to make them, they must make good and safe ones.

This case was fairly tried; the railroad company produced no evidence; there are no exceptions to the instructions of the court; these two immaterial matters are the only complaints made; the verdict, and the means by which it was arrived at, are approved by a trial judge who is unusually careful and considerate; and justice requires that such a verdict should not be lightly disposed of. Having no doubt but that substantial justice has been done, we recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.