JOHN MORBACH V. THE HOME MINING COMPANY.

53    731
d56   115

53    731
68    323

53    731
76    113
76    116

53    731
79    594

1. COAL MINING — *Defective Timbering of Shaft — Injury to Employé — Evidence — Jury.* Where, in an action by a coal miner to recover damages from a mining corporation for a personal injury caused by the falling of a heavy stone from the side of a mining shaft about 80 feet deep, *which was being sunk by workmen to a greater depth,* on account of the failure of the corporation to properly crib or timber the sides of the shaft to within a sufficient distance of the bottom thereof to reasonably protect the workmen, and the evidence introduced upon the trial showed that the miner, although experienced in mines of other states, knew nothing about the shaft where he was employed until he was taken down in a tub or bucket, excepting that it had been represented to him by the superintendent in charge of the shaft that it was "all right, nice, and safe," and "that everything was all safe and kept nice," and that he had no knowledge or opportunity to ascertain the dangerous condition of the shaft before his injury, *held,* that the evidence was sufficient to go to a jury upon the right of the injured coal miner to recover damages from the corporation.

2. ———— *Interest of Stockholder.* The interest of a stockholder of a corporation is of a collateral nature, and not the interest of an owner.

3. MINING CORPORATION — *Action by Stockholder.* The mere fact that a coal miner engaged by a mining corporation in sinking a coal shaft in the ground is a small stockholder of the corporation will not prevent him from recovering damages for a personal injury caused by the negligence of the corporation. Such a stockholder has no personal control or management of the coal shaft or of the corporation or its property.

4. EMPLOYER, *When not Culpably Negligent.* Where the employer and employé are equally competent to judge of the risks and hazards, and both have equal knowledge of the surroundings, the employer cannot be culpably negligent to the employé, although the work may be dangerous and hazardous, and although it might be made safer by the employer if he should choose so to do. (*Rush v. Mo. Pac. Rly. Co.,* 36 Kas. 134; *A. T. & S. F. Rld. Co. v. Schroeder,* 47 id. 315.)

5. EMPLOYÉ, *Not to Assume Risk, When.* An employé should leave the dangerous employment of his employer on discovery of the master's method of doing business, when he finds that the master does not remedy the danger complained of, and especially is this true when the danger is imminent or obvious from former injuries received by the employé in the place where he is employed.

*Error from Leavenworth District Court.*

ON the 20th day of August, 1889, *John Morbach* commenced his action against *The Home Mining Company*, and in his petition, as his first cause of action, alleged:

"That at the time of the happening of the wrong and grievances hereinafter complained of the defendant was, and now is, a corporation duly organized under the laws of the state of Kansas, and that, as such corporation, it was engaged in the work of sinking a coal-mining shaft, in the county of Leavenworth, state of Kansas, and is now engaged in the business of working and operating said shaft in said county and state; that it had then and there certain machinery, agents, employés and workmen engaged in its said business of sinking and operating said coal-mining shaft; that on or about the 13th day of August, 1888, plaintiff, while engaged in the capacity of workman and employé of the defendant's work of sinking said shaft, was, on account of the fault, negligence, carelessness and recklessness of defendant, its agents and employés, greatly injured by being struck on his right side and hip by a large and heavy stone falling from a point in the shaft above where plaintiff was at work, thereby mashing, bruising and lacerating his side, and mashing, bruising and breaking his hip, resulting to plaintiff in the loss of the use of his right hip and leg, and in great pain and misery in his right side, and that, in consequence thereof, plaintiff is permanently injured; that said injuries occurred to plaintiff solely and wholly on account of the fault, carelessness, negligence and recklessness of defendant, its agents and employés, and without any fault or negligence on the part of the plaintiff, in not using and exercising proper care and caution and skill in bracing, casing and timbering said shaft above the place where plaintiff was at work, and in not properly bracing, casing and timbering the same, so as to prevent accident and injury by falling earth and stone from above where plaintiff was at work sinking the shaft; that plaintiff, at the time of receiving his injuries, was in the exercise of due care and caution, and had no knowledge, notice or warning of the dangerous condition of the shaft; that, in consequence of the premises aforesaid, plaintiff has, on account of said injuries so as aforesaid received, suffered great bodily pain and mental anguish, and is permanently injured, to his damage in the sum of $10,000."

He also alleged in his petition a second cause of action, from a similar accident that occurred on the 25th of October, 1888, when a stone fell upon his left shoulder; and he further alleged a third cause of action founded upon the negligence of the defendant, occurring on January 4, 1889, by which his left leg was broken between the knee and ankle joint. On September 16, 1889, the Home Mining Company filed its answer, alleging first a general denial, and alleging further contributory negligence on the part of the plaintiff. On the 21st of September, 1889, the plaintiff filed his reply, containing a general denial for the answer. Trial commenced on the 30th of April, 1890, before the court with a jury. After all of the evidence had been introduced on the part of the plaintiff, and after the defendant had examined one witness in its behalf, a demurrer was filed by the defendant to the evidence, bearing upon the second and third causes of action. This demurrer was sustained by the court, and thereupon the defendant filed another demurrer to the evidence bearing upon the first cause of action, which was also sustained. Subsequently, judgment was rendered in favor of the defendant and against the plaintiff for costs, amounting to $213.40. Proper exceptions were taken by the plaintiff to the rulings, and to the judgment rendered. He brings the case here.

*William C. Hook,* and *C. W. Chase,* for plaintiff in error:

We submit that the evidence was clearly sufficient to require the court to submit the case to the jury, and that error was committed when the demurrers were sustained. It will not do to say, in support of the ruling of the district court, that there was some evidence introduced on behalf of the plaintiff that tended to show that he was guilty of contributory negligence, or that he knew of the specific danger which caused his injuries. See *Christie v. Barnes,* 33 Kas. 317; *Wolf v. Washer,* 32 id. 533; *Brown v. A. T. & S. F. Rld. Co.,* 31 id. 1; *K. C. Ft. S. & G. Rld. Co. v. Foster,* 39 id. 329.

It is the duty of the employer to exercise reasonable care and diligence in providing the servant with a reasonably safe

place at which to work. The servant does not stand upon the same footing as the employer as regards inspection and investigation of the risks to which he may be exposed, and he has the right to assume that his employer has adopted precautions to make his surroundings safe and suitable for the business engaged in, and particularly so where the employer, as in this case, has expressly informed him that the place was safe. See *A. T. & S. F. Rld. Co. v. Moore*, 29 Kas. 644; *A. T. & S. F. Rld. Co. v. Holt*, 29 id. 152.

The question as to the cause of injury, etc., in a case of this character is for the jury. *Pullman Palace Car Co. v. Bluhm*, 109 Ill. 20; same case, 18 Am. & Eng. Rld. Cas. 87.

A coal miner is not precluded from recovering for an injury caused by the falling of a rock from the roof of a mine simply because he knew the general nature of the roof, and that there were no timbers in the entry. See *Kellogg v. Wilson*, 21 Ill. 141; *Hullehan v. G. B. W. & St. P. Rld. Co.*, 68 Wis. 520; same case, 32 N. W. Rep. 529.

It is the law that a servant does not assume the risks under such circumstances by remaining a reasonable length of time in the employment, after the master has promised to correct the danger, and that the question of reasonable time is one of fact for the jury. See Cooley, Torts, 559; Shearm. & R. Neg., § 96; *Hough v. Railway Co.*, 100 U. S. 214; *Railway Co. v. Croker*, 41 Kas. 747; *A. T. & S. F. Rld. Co. v. McKee*, 37 id. 592.

"Where a master has expressly promised to repair a defect in the machinery used by the servants in his employment, the servant may recover for an injury caused thereby within such a period of time after the promise as would be reasonable to allow for its performance." *Parody v. Railway Co.*, 15 Fed. Rep. 205.

*Lucien Baker*, for defendant in error:

We submit that the trial court properly sustained the demurrer to the evidence as applicable to the second and third counts of the petition. Morbach was an experienced coal

miner. He had been engaged in such business for more than 35 years. He, during those years, had sunk and been engaged in sinking several shafts in stone and earth varying in depth from 225 to 250 feet. He knew all about blasting, timbering, cribbing, etc., before he came to Leavenworth. He had had long years of experience in such business. He became a stockholder or partner in the venture of sinking the said shaft or mine at Leavenworth. Being a man of intelligence and experience, he must be held to the exercise of his judgment and common sense. To insist that he knew nothing about our mines, would be to affirm that he was not a man of common sense. He was here a month investigating and seeking employment in the same vocation he had followed during all his previous years before embarking in this enterprise.

It is lawful for a master to conduct his business in his own way.

"A master may conduct his business in his own way, and when a servant takes service with a master who conducts his business in a way which the servant thinks is unsafe, he cannot recover from the master damages for an injury happening to him. He should refuse to enter upon the employment, or should leave it on discovery of the master's method of doing business." *Naylor v. Chicago Rld. Co.*, 11 N. W. Rep. 24; *Hawk v. Penna. Rld. Co.*, 11 Atl. Rep. 459; 4 Metc. (Mass.) 49; *Rush v. Mo. Pac. Rly. Co.*, 36 Kas. 134, *et seq.*

If the law is as above stated, then of course he was guilty of contributory negligence, or, in other words, he himself took the chances in such dangerous business with his partners or associates, regardless of the manner in which it was being conducted; regardless of promises with reference to its conduct, if any were made. If promises are relied upon, the person has a reasonable time in which to expect the promises to be fulfilled; and if such reasonable time expires without the repairs being made, then he takes the risk upon himself, and stands in the same position as though no such promises had been made.

We submit further, that the court did right in sustaining

the demurrer to the first cause of action. From the evidence,
it appears that Morbach was a stockholder or partner in the
enterprise; that they were all personally and pecuniarily in-
terested together; all engaged in their own business. Accord-
ing to his own testimony, he had been a superintendent in
sinking shafts and mines through rock and earth to the depth
of several hundred feet. He had lived for thirty-five years
practically in deep coal mines and about coal shafts.

The principles of law claimed by the plaintiff surely have
no application to a case like this. The case here presented is
that of a partner sinking his own mine, and relying upon
some statement of some of his copartners that the thing they
believed was safe, when he knew that it was not safe at any
time, but was dangerous at all times, and especially so unless
the timbering was kept very close to the bottom of the pit,
and it was even dangerous then.

A party may have exercised all the care which the law re-
quired, and yet after an accident he may think it well to use
additional caution or safeguards. In such case, it is unjust to
hold that the mere fact that he had done so is an admission
of previous negligence, or that his return to previous methods
evinces a disposition to persist in a negligent and dangerous
course of conduct. · *Lang v. Sawyer,* 76 Wis. 75; *Costello v.
Landwher,* 28 id. 530; 44 N. W. Rep. 1095; 16 id. 358;
28 N. E. Rep. 10.

The opinion of the court was delivered by

HORTON, C. J.: On August 13, 1889, when the plaintiff
was injured in the coal shaft of the Home Mining Company,
that company was engaged in sinking, in Leavenworth city,
a vertical shaft hundreds of feet deep, with lateral dimensions
of about 16 by 16 feet. Peter Strauss was the superintend-
ent in charge of the work. The sinking of the shaft was
prosecuted night and day by three shifts of men, working
eight hours each. Each shift was under the control of a fore-
man, who stayed at the bottom of the shaft while the men
under his charge were working. The workmen were raised

and lowered in going and coming from their work at the bottom of the shaft by a tub or bucket on a rope, operated from above. The shaft, on its way downward to the coal veins, passed through many different strata or formations, varying in thickness and kind, such as earth, sandstone, soapstone, limestone, shale, rock, etc. In going through the harder formations, it was necessary for the workmen to drill and blast, the men going out of the shaft when the blasts were fired.

For the protection of the men at work in the bottom of the shaft, it was necessary to crib or case the sides with timbers, to prevent rock and other substances from falling upon the men. This cribbing or timbering was done by making a lining of heavy timbers against the four sides of the shaft, fastening them to the walls and bracing them with cross beams between which the tub and rope moved up and down. It appears from the testimony that the casing in the shaft should have been kept down to within a few feet of the bottom of the shaft. It was the duty of the superintendent to see that the shaft was properly timbered. The plaintiff was a newcomer in Leavenworth, having been there a month only before he first went to work in the shaft. He previously worked in mines in Ohio, and had been connected with the sinking of coal shafts there. On the 13th of August, 1888, plaintiff applied to Strauss, the superintendent, for employment. The shaft was then about 80 feet in depth. The plaintiff, at this time, had no knowledge of the condition of the shaft, excepting such as he obtained from the representations of the superintendent, and what he could see in going down and after he was at the bottom of the shaft. He testified:

"Ques. You may state about what time in 1888 you went to work. Ans. In August; I believe on the 13th.

"Q. Who employed you? A. Mr. Strauss.

"Q. What knowledge, if any, had you of the condition of the shaft when you went to work? A. Mr. Strauss said, 'It is all right, nice, and safe.' Mr. Strauss told me 'that everything was all safe, and kept in nice shape.'

47—53 KAS.

"Q. What time in the day did you go to work in the mine? A. In the afternoon. About 2 o'clock.

"Q. How long had you been in the mine when you received the first injury? A. Well, I am not sure, two hours; it might be three. I could not tell.

"Q. Now state to the jury just how your first injury happened. A. Well, I came down in the shaft standing on the bucket. When I got down, I stepped out of the bucket, and the shift boss told me to bail water from a kind of a hole made there, and to bring it out in a bucket. I sat there with my face to the south, on the west side. A stone came down and struck me on the hip, knocking me down in the water.

"Q. What did you do immediately after you were knocked down? A. A man put me in the bucket and pulled me out.

"Q. How long were you in the house at this time from this injury? A. Well, I think about three weeks. It might be more.

"Q. Tell the jury whether it was light or dark in the shaft. A. It was dark.

"Q. What kind of lamps? A. A little lamp hangs on the caps.

"Q. How many of you were there working in that shaft when you first got hurt? A. I believe there were six men.

"Q. Who was this shift boss that told you where to go to work? A. Mr. Sutton."

An examination of the evidence of the plaintiff and the other witnesses shows that there was ample testimony offered on the trial that the representations made by the superintendent to induce the plaintiff to go to work in the coal shaft were not true; that the cribbing or timbering of the sides of the shaft was not kept sufficiently far down to reasonably protect the workmen; that those in charge of the work had knowledge of the dangerous condition of the shaft prior to the time the plaintiff commenced work, and that, at the time he was first injured, the plaintiff had no knowledge of or any opportunity to ascertain the dangerous condition of the shaft.

The personal injury complained of by the plaintiff which occurred on the 13th of August, if the evidence contained in the record be true, was caused by the fault or negligence of the superintendent of the mining company having charge of the coal shaft. Such officer or agent was the substitute for

the master—the corporation. The company was liable for his acts or negligence. (*A. T. & S. F. Rld. Co. v. Holt*, 29 Kas. 152; *A. T. & S. F. Rld. Co. v. Moore*, 29 id. 644; *Railroad Co. v. Baugh*, 149 U. S. 368; *Railway Co. v. Snyder*, 14 Sup. Ct. Rep. 756.) It cannot be said that the plaintiff entirely failed to prove his case; therefore the evidence was sufficient to go to the jury to sustain the allegations of the first cause of action of the petition. (*Osage City v. Brown*, 27 Kas. 74; *Brown v. A. T. & S. F. Rld. Co.*, 31 id. 1; *Wolf v. Washer*, 32 id. 533; *Christie v. Barnes*, 33 id. 317; *Gardner v. King*, 37 id. 671.)

1. Coal mining—defective timbering of shaft —injury to employe—evidence—jury.

It is suggested, upon the part of the defendant, that, as the plaintiff was a stockholder in the mining company, owning three shares of stock, of the par value of $50 each, he was a partner with the other stockholders, sinking his own shaft and managing his own business, and that he cannot recover. This contention is not tenable. A corporation differs from a partnership in many respects. The members of a partnership are all agents of the firm and of each other in all matters within the scope of the partnership business. The members of a partnership are jointly and severally liable to pay all the debts or demands of the partnership. But the partnership is not liable in an action at law to the individual members for any claim or demand in a matter within the scope of the partnership, except that each member of a partnership may have, in certain cases, an action for an accounting with his copartners. The members of a corporation can only act about the business of a corporation in their aggregate capacity, through a board of directors or trustees whom they have chosen, and the members are not liable for any corporate debts or demands, except as provided by the charter of the corporation or by some statute. The stockholders are not the private and joint owners of the property of the corporation, and the interest of each stockholder is of a collateral nature, not the interest of an owner. (*Button v. Hoffman*, 61 Wis. 20; Thomp. Stockh., §§ 1, 2; *Hyatt v. Al-*

2. Interest of stockholder.

*len*, 4 Am. Corp. Cas. 624.)    The plaintiff, as a stockholder,
had no personal control or management of the
mine, the coal shaft, or of the company.    A cor-
poration does its business by its regularly ap-
pointed officers and agents, whose acts are those of the cor-
poration only.

3. Mining corpo-
ration—action
by stockholder.

After the plaintiff partly recovered from the injury which
he received on the 13th of August, 1888, he went to work
again in the mine.    His second alleged cause of action is the
same in substance as the first, except that he alleged therein
another injury in the same shaft, by the falling of a stone, on
October 25, 1888, because the timbering was not kept close
enough to the bottom of the shaft, where he was working.
The reason he gave for going to work again was, that Strauss,
the superintendent, "promised him that he would keep the
timbering down to within two or three feet of the bottom of
the shaft."    He testified that the timbering ought to have
been kept down near to the bottom.    He worked about 50
days before he was hurt the second time.    The former injury
had made him acquainted with the danger of working in the
shaft.    At his second injury, he knew how the business was
being conducted, and whether the timbering was being kept
down for the protection of the workmen.    Yet, when he was
hurt the second time, the timbering was up from 12 to 15
feet.    It was his duty to assist in the timbering, under the
direction of the foreman, and he therefore knew just how far
the timbering was up.

"Usually, where some instrument or appliance has become
unsafe, from use or otherwise, and the danger from its use is
not imminent or obvious, the servant may con-
tinue in the master's employment and use, if for
a short time, with the expectation that the master
will restore the defective instrument or appliance
to its former condition." (*Rush v. Mo. Pac. Rly. Co.*, 36 Kas.
129.)    But if a servant continues in his work an unreason-
able length of time after the master has agreed to remedy the
defect complained of, or if the danger is imminent or obvious,

4. Employer,
where not cul-
pably negli-
gent.

he assumes the risks incident thereto. Generally, the question of reasonable time is one of fact for a jury; but where a servant has full knowledge of the danger of his employment, as in this case, after his first injury, and continues in the master's service while he is conducting his business in a way which the servant knows is dangerous, the servant cannot continue to wait, and, after being injured, then claim damages. He should leave his dangerous employment within a reasonable time, on discovery of the master's method of doing business, when he finds that the master will not remedy the danger or fulfill his promise in that respect.

5. Employe, not to assume risk, when.

We think that the plaintiff, who was fully capable of contracting for himself, and was an old and experienced miner, knew the danger, which was imminent and obvious, from his own experience, in working in the shaft after he went back about September 4, when the timbering of the shaft was not kept in a reasonably safe condition, and cannot recover for the injury of October 25. (*A. T. & S. F. Rld. Co. v. Schroeder*, 47 Kas. 315.) For the same and stronger reasons, the trial court properly sustained the demurrer to the third cause of action. *Railway Co. v. Croker*, 41 Kas. 747, is an extreme case. In that case the plaintiff had merely complained about the handle of the hammer he was using. He had not been previously injured, and the danger to him in using it was not clearly obvious.

The judgment of the district court will be reversed, and the cause remanded, with direction to the court below to overrule the demurrer to the first cause of action, and for further proceedings in accordance with the views herein expressed.

All the Justices concurring.