## A. J. TAYLOR, RESPONDENT, *v.* NEVADA–CALIFORNIA–OREGON RAILWAY, A CORPORATION, APPELLANT.

MASTER AND SERVANT—DEFECTIVE MACHINERY—SERVANT'S RIGHT TO CONTINUE WORK—NOTICE TO MASTER OF DEFECT—PROMISE TO REPAIR—ASSUMPTION OF RISK—IMMINENCY OF DANGER—EXCESSIVE DAMAGES. 1. Where a motion for a continuance in an action for injuries was based on the absence of a witness, who was not present when the injury occurred, and the testimony which he was expected to give in regard to other matters was not only immaterial, but could have been supplied by other witnesses, there was no abuse of discretion in refusing the continuance.

2. If a servant, on noting a defect in machinery operated by him, notifies his master, and receives his promise to repair it, he may continue to operate such machinery for a reasonable time without thereby assuming the risks incident to the defect, provided the danger therefrom is not so imminent that a person of ordinary prudence would refuse to continue the work.

3. A railroad engineer notified his employer that his engine tender, which was practically new, was rolling too much on its trucks, and that it was getting dangerous, and received a promise that the defect would be remedied. Four days later he again gave notice that the defect ought to be remedied at once, and received a similar promise. The defect consisted of a gradually increasing weakness of ·the tender's springs, which, no repairs being made, finally resulted, five days after the second notice, in the derailment of the engine and plaintiff's injury, the front bolster of the tender having caught in the front truck, and lifted it from the track: *Held*, that the question as to whether the danger was so imminent as to require plaintiff to discontinue work, notwithstanding the promises to repair, was for the jury.

4. Whether plaintiff continued in the service after such a period of time had expired after the promises to repair as would preclude all reasonable expectation that such promises would be fulfilled, was a question for the jury.

5.  In an action for personal injuries, plaintiff's evidence showed that he was 36 years old, and earning $100 per month, when injured; and that his injuries consisted of a blow on the head, causing partial deafness, a burn on the right leg, a burn and bruise on the arm, two ribs broken from the sternum, a depressed lung, a permanently painful strain and separation of the muscular fibers of the back, rendering him permanently weak, and causing lateral curvature of the spine, and permanently disabling him from following his avocation or performing ordinary manual labor. Defendant's evidence tended to contradict plaintiff's as to the extent of the injuries: *Held*, that a verdict of $15,500 was not so excessive as to show any improper motive or bias on the part of the jury. (FITZGERALD, J., dissenting.)

APPEAL from the Second Judicial District Court, Washoe County; *W. D. Jones*, Judge presiding.

Action by Andrew J. Taylor against the Nevada-California-Oregon Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*E. R. Dodge* and *W. E. F. Deal*, for Appellants:

I.   The respondent is not entitled to recover any damages against the appellant in this action because he was under an obligation to exercise due care in protecting himself from harm while discharging duties under which his liabilities to danger arose. He failed to exercise such care, and exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment, and was, notwithstanding any promises made by his superiors, guilty of such contributory negligence as to defeat his claim for injuries so received. (*District of Columbia* v. *McElligott*, 117 U. S. 633; *Indianapolis R. R. Co.* v. *Watson*, 114 Ind. 20; *Eureka* v. *Bass*, 81 Ala. 200; *Woodward Iron Co.* v. *Jones*, 80 Ala. 128; *Vogt* v. *Houstain*, 81 Minn. 180; *Patnode* v. *Harter*, 20 Nev. 311; *Illinois Steel Co.* v. *Mann*, 170 Ill. 200; *S. C. Ry. Co.* v. *Finlayson*, 16 Neb. 584; 29 Pac. 1007; 39 Pac. 85.)

II.   It is after all not what the respondent thought would be the personal result to him, but what, under the admitted facts, a reasonable man should think, and, there being no dispute about the facts, it is a question of law and not of fact as to whether the danger was so imminent that no reasonable man would take such risks, or, if he did take them, whether

he can hold his employer responsible for his injuries, notwithstanding the notice he gave and the promise that was made to him. (*Indianapolis R. R. Co.* v. *Watson*, 114 Ind. 20; *Woodward Iron Co.* v. *Jones*, 80 Ala. 128.)

III.   It seems to be well settled by the weight of authorities that if a servant, whose master has promised to repair defects in machinery used by him within a reasonable time, continues in the service after such reasonable time has elapsed, knowing that the master has failed to keep his promise so made, the servant, by so continuing in the service, will be deemed to have assumed the additional risk and cannot recover for injury happening to him after he becomes aware of the master's failure to perform his promise.  (2 Thompson on Negligence, 1010; Wharton on Negligence, sec. 220; *Eureka* v. *Bass*, 80 Ala. 200; 60 Am. Rep. 152; *Ind. R. R. Co.* v. *Watson*, 114 Ind. 20; File Am. Reps. 578; *Counsel* v. *Hall*, 145 Mass. 468; *Krutchfield* v. *Richmond R. R. Co.*, 78 N. C. 300; *Stephen* v. *Duncan*, 73 Wis. 404; 9 Am. St. Reps. 806.)

IV.   There is in the complaint an allegation of deprivation of capacity to follow a special avocation, but there is no allegation or proof of total incapacity or inability to pursue some of the numerous other callings or businesses open to all, therefore it was incumbent on respondent to prove to what extent he had sustained pecuniary loss, and this he could only do by showing his earning capacity at and for some time before the alleged injury and the expectancy or probable duration of his life and his probable or possible future earnings.   One seeking damages for loss must show the loss sustained, and, as respondent asks damages for such loss, the burden is on him to prove the value thereof.   "General damages or such damages as the law holds to be the necessary result of the cause of action set forth in the declaration need not be specially pleaded, but it may be recovered under the general allegation of damage."   (5 Enc. Pl. & Pr. 717; *Treadwell* v. *Whittier*, 80 Cal. 575; *Stevenson* v. *Smith*, 28 Cal. 102-3-4; *Mallery* v. *Thomas*, 90 Cal. 644-7.)

V.   "A jury cannot give compensation for loss of time, remuneration for which is paid, etc., unless there is an allegation in the complaint as to these matters."   (*Dabovich* v.

*Emeric*, 12 Cal. 171.)   "Special damages which are the natural but not necessary result of the injury complained of must be specifically alleged."   (5 Enc. Pl. & Pr. 719.)

*Torreyson & Summerfield* and *F. H. Norcross*, for Respondent:

I.   It was not essential that plaintiff should prove his earning capacity either before or after his injuries, for the reason that such proofs merely aid the court and jury in measuring the damages.   (Watson on Dam. Per. Injuries; *Logansport* v. *Justice*, 74 Ind. 386; *Fisher* v. *Jansen*, 128 Ill. 549; *Rosencranz* v. *Railroad Co.*, 108 Mo. 9.)

II.   Evidence tending to establish the probable duration of respondent's life, while properly admissible to aid the court and jury in formulating a basis of problematic calculation, was not at all essential to entitle respondent to recover fair and reasonable damages to be fixed by the court and jury from the general evidence of the case.   (Watson on Dam. Per. Injuries, 634; *Railroad Co.* v. *Binion*, 107 Ala. 645; *Fisher* v. *Jansen*, 128 Ill. 549; *Bartley* v. *Trorlicht*, 49 Mo. App. 214; *Rosencranz* v. *Lindell R. Co.*, 108 Mo. 9; *Walker* v. *Erie Co.*, 63 Barb. 260.)

III.   In no case does the law ever require a proof of a higher degree of certainty than the nature of the particular case admits.   (*Thompson* v. *Louisville Co.*, 8 So. 406; *Lake Shore Co.* v. *Peterson*, 86 Ill. 375; *Squires* v. *Chillicothe*, 89 Mo. 226; *Asbury* v. *Charlotte*, 34 S. E. 354; *Shepard* v. *Milwaukee*, 15 Wis. 318; *Allison* v. *Chandler*, 11 Mich. 548.)

IV.   The law, adjusting its principles to the persuasion of human reason, does not prescribe any definite . rule for the determination of the amount of damages which should be awarded in personal injury cases, but leaves their assessment to the honest, deliberate, and unprejudiced judgment of the jury, coinciding with the opinion of the trial court, and their verdict and judgment will not be disturbed by appellate courts unless the amount is so large as to induce a reasonable person, upon hearing the circumstances, to declare it outrageously excessive, or as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury.   (Watson on Dam. Per. Injuries, 325-6; *Solen* v. *V. & T. R.*

*R. Co.*, 13 Nev. 138; *Wheaton* v. *N. B. & M. Co*, 36 Cal. 590; *City of Panama* v. *Phelps*, 101 U. S. 451; *Blair* v. *Ry. Co.*, 43 Iowa, 676.)

V. The mere opinion of the court that the damages awarded by the jury are excessive is not sufficient to warrant a reversal by an appellate court unless they are, *per se*, so excessive as to indicate passion or prejudice. (Watson on Dam. Per. Injuries, 328; 1 Sutherland on Damages, 810; *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 138; *Lee* v. *S. P. Co.*, 101 Cal. 121; *Engler* v. *W. U. Tel. Co.*, 69 Fed. 187.)

VI. It should be constantly borne in mind that, in addition to the permanency of respondent's injuries, it was clearly proven that the much more serious damage of a lifetime of pain and agony resultant from the injuries to his back will surely ensue. For such pain and suffering the law does not leave the sufferer remediless. (*Wedekind* v. *S. P. Co.*, 20 Nev. 301; *Railroad Co.* v. *Harmon*, 147 U. S. 571; *Engler* v. *W. U. Tel. Co.*, 69 Fed. 188.)

VII. "If a servant, noting a defect in the appliance or place, complains to the master, who promises that it shall be remedied, he may, in reliance upon the promise, continue in the service for a reasonable time thereafter without thereby assuming the risk, provided the danger is not of so imminent a character that a person of ordinary prudence would refuse to continue in the service." (Barrows on Negligence, 120; Bailey's Master's Liability for Injuries to Servant, 206; *Hough* v. *Railroad Co.*, 100 U. S. 215; *Stephenson* v. *Duncan*, 73 Wis. 404; *Union Mfg. Co.* v. *Morrissey*, 40 Ohio St. 150; *Laning* v. *Railroad Co.*, 49 N. Y. 521; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Conroy* v. *Vulcan Works*, 62 Mo. 35; *Greenleaf* v. *Railway Co.*, 33 Iowa, 52; *Le Clair* v. *Railroad Co.*, 20 Minn. 9; *Marsh* v. *Chickering*, 101 N. Y. 396; *Indianapolis R. Co.* v. *Watson*, 114 Ind. 20; *Lyttle* v. *Railroad Co.*, 84 Mich. 289; *Missouri F. Co.* v. *Abend*, 107 Ill. 44; *Linch* v. *Mfg. Co.*, 143 Mass. 206; *Buzzeell* v. *Mfg. Co.*, 48 Me. 113; *Miller* v. *Mining Co.*, 55 Pac. 58; *Texas R. Co.* v. *Bingle*, 91 Tex. 287; *Standard Oil Co.* v. *Helmick*, 148 Ind. 457; *Parody* v. *Railroad Co.*, 15 Fed. 205; *Indianapolis Ry. Co.* v. *Ott*, 11 Ind. App. 564; Buswell on Personal Injuries, pp. 434, 436.)

VIII. The time in which the servant is justified in con-

tinuing in his employment in reliance upon the master's promise to repair, without assuming the risks, is such period of time as would not preclude all reasonable expectation that the promise might be kept. (*Hough* v. *Railroad Co.*, 100 U. S. 213; *Stephenson* v. *Duncan*, 73 Wis. 404; Shearman & Redfield on Negligence, 4th ed. sec. 215; 107 Ill. 44; 23 Ind. App. 78.)

IX.   "Ordinarily whether a servant had waived the neglect of the master, and assumed the risk after promise of repair, is a question for the jury." (Bailey's Master's Liability for Injuries to Servant, 209; *Laning* v. *Railroad Co.*, 49 N. Y. 521; *Stephenson* v. *Duncan*, 73 Wis. 407; *Union Mfg. Co.* v. *Morrissey*, 40 Ohio St. 150; *Hawley* v. *R. Co.*, 82 N. Y. 370; *Missouri F. Co.* v. *Abend*, 107 Ill. 44; *Patterson* v. *Railway Co.*, 76 Pa. St. 389; *Hough* v. *Railroad Co.*, 100 U. S. 213; *Belair* v. *Ry. Co.*, 43 Iowa, 662; Buswell on Personal Injuries, pp. 435-6; 40 L. R. A. 789, note c; 64 Minn. 449; 26 N. E. Rep. 1086.)

X.   The affidavit for continuance is fatally defective in failing to show that there are not other persons by whom appellant could prove the facts that were expected to be proven by the sick witness. (*State* v. *Marshall*, 19 Nev. 240; *State* v. *O'Flaherty*, 7 Nev. 155; *Hodges* v. *Marsh*, 31 N. E. 151; 4 Enc. Pl. & Pr. 887; Comp. Laws, 3255; Dist. Ct. Rule XII.)

XI.   A new trial should not be granted on account of the refusal of the court to grant a continuance when the affidavit of the sick witness himself has not been presented to the court showing that he would testify to the facts desired to be proven by him, nor any showing made to the court disclosing why such affidavit has not been procured. (*Pilot Creek Co.* v. *Chapman*, 11 Cal. 161; *People* v. *DeLacy*, 28 Cal. 590; *People* v. *Jocelyn*, 29 Cal. 563; Hayne on New Trial & Appeal, 63; Abbott's Trial Brief, Civil Jury Trials, 29.)

XII.   A new trial should not be granted on account of the refusal to grant a continuance for the reason that it was never shown at any time that the attendance of the sick witness could be assured with a reasonable degree of certainty when his testimony would be desired. (Abbott's Trial Brief, Civil Jury Trials, 28; *Smyth* v. *Wilmington Co.*, 40 Atl. 189;

*Home Ins. Co.* v. *Galley*, 43 Neb. 71; *Rowland* v. *Shepard*, 43 N. W. 344; *Kelly* v. *Weir*, 43 N. Y. Sup. 497; *Campbell* v. *McCoy*, 3 Tex. Civ. App. 298.)

*E. R. Dodge* and *W. E. F. Deal*, for Appellant, in reply:

I.   In note e, 49 L. R. A. p. 38, under subhead "Contributory negligence inferred from servant's knowledge of defects alone," it is said:   "On general principles it is clear that, where there can be no reasonable doubt that a person in a servant's position, who knew of the defect in question, must also have understood the resulting risk, it may be ruled, as a matter of law, that, for the purpose of defense, his information was complete.   That appliance may be so grossly or clearly defective that the servant must have known of the risk to which it exposed him, was laid down in *Sims* v. *Lindsay*, (1898) 122 N. C. 678, 30 S. E. 18."   See other authorities thereunder cited.   In a Montana case the supreme court, in holding that plaintiff, a section hand on a defective car that had been promised to be replaced, could not recover, in part said:   "He never refused to use the car (hand car); he was never threatened to be discharged if he did not use it." (*McAndrews* v. *Montana Union Ry. Co.*, 39 Pac. 85-87.)

II.   The common law being the rule of decision in our courts, the following, from the second and last edition of Buswell on Personal Injuries, may aptly be quoted in support of appellants' contention in the present case (see sec. 204): "By the common law, it is a part of the implied contract between the employer and employee that the latter assume the ordinary risks of the employment, which are apparent, and which he has the opportunity to detect.   The principle is that where the servant has as good an opportunity as the master to ascertain and avoid the danger for himself, he will have no recourse against the master in case he is injured thereby; and he accepts the employment upon this implied condition."   (*Priestly* v. *Fowler*, 3 M. & W. 1; *William* v. *Clough*, 3 H. & N. 258; *Griffiths* v. *Gidlow*, 3 H. & N. 648; *Paterson* v. *Wallace*, 1 Macq. 748; *Seymour* v. *Maddox*, 16 Q. B. 326, 20 L. J. Q. B. 327; *Dynen* v. *Leach*, 26 L. J. N. S. Exch. 221.)

III.   "It is not the province of courts to enforce the arbi-

trary edicts of juries, when it is apparent that their verdicts have been influenced by their passions and prejudices rather than by the law and the facts." (*Quigley* v. *C. P. R. R. Co.*, 11 Nev. 350–73.)

## ON PETITION FOR REHEARING.

*E. R. Dodge* and *W. E. F. Deal*, for Petitioner:

I.   The district court erred in refusing appellant's application for a postponement of the trial, and its refusal was an abuse of its judicial discretion, for which this court ought to grant a new trial. (Sec. 3255, Comp. Laws of Nev.; Dist. Ct. Rule XII; *Choate & Brown* v. *The Bullion M. Co.*, 1 Nev. 73; *Beatty* v. *Sylvester*, 3 Nev. 231; *Brown* v. *Warren*, 17 Nev. 421; *Yori* v. *Cohn*, 26 Nev. 206.)

II.   "The opinions of scientific witnesses are admissible in evidence, not only where they rest on the personal observation of the witness himself, and on facts within his own knowledge, but even when they are merely *founded on the case as proved by the other witnesses* at the trial." (Taylor's Law of Evidence, 6th ed. sec. 1278, vol. 2, p. 229; *Turnpike Co.* v. *Leonhardt*, 66 Md. 77.) "This knowledge may be derived from experience or from direct study." (Am. & Eng. Enc. Law, vol. 12, p. 425.) "An expert witness speaking upon a question of science may be asked in the presence of a given effect of what cause either was or might be the resultant." (*Meyer* v. *New York & H. R. R. Co.*, 98 N. Y. 645, affirming 32 Hun, 644.)

III.   Every hour that plaintiff ran this train, after knowing the defective condition of the machinery, he was committing a wrong against the public, and would have been equally liable with the defendant for any damage thereby occasioned to third parties.   This is an elementary proposition.   (Buswell on Personal Inj., sec. 31; 5 Thompson on Corporations, sec. 6288; Cooley on Torts, p. 142.)

IV.   Respondent and the appellant became joint wrongdoers from the time the defendant was notified of the defects in the machinery, and the question arises:   Can one wrongdoer recover of his joint wrong-doer for injuries received in consequence of their wrong-doing?   Public policy forbids. (*Spencer* v. *Harvey*, 22 Cal. 336; *Gaston* v. *Drake*, 14 Nev.

181.) Not only are such contracts void, but the court on its own motion will deny all relief as soon as the facts become apparent. And such action of the court does not depend upon any formal pleading of the facts rendering the contract void. (*Morrill* v. *Nightingale*, 93 Cal. 452; *Kremer* v. *Earl*, 91 Cal. 112; *Prost* v. *More*, 40 Cal. 347.) On such contracts the courts leave the parties to them exactly where they find them, refusing all relief. (*Vulcan Powder Co.* v. *Hercules Powder Co.* 96 Cal. 510.) The engineer was bound at all times to exercise the greatest vigilance, caution and care to protect his passengers, but here we find that he entered into a contract with the company to continue to run the engine after he knew it was dangerous, and he seeks to recover on this kind of a contract.

V. In this case certainly when the springs got weaker, so that they would let the bolster go further and invariably catch when the tender rocked and raised the wheels off the track, the defect was so glaring that, with the utmost care and skill of respondent, the danger was still imminent, that no one but a reckless man like respondent would have incurred. This court has just as much right to pass upon this matter as a question of law, the facts undisputed, as the jury had to decide the facts. (*Woodworth* v. *Jones*, 80 Ala. 128; *Indianapolis R. R. Co.* v. *Watson*, 114 Ind. 20; *Pittsburgh* v. *Spencer*, 98 Ind. 186; *Counsel* v. *Hall*, 145 Mass. 468; *Wabash* v. *Locke*, 112 Ind. 404; Holmes' Common Law, 120.)

By the Court, MASSEY, C. J.:

This action was brought by the respondent to recover from appellant damages for personal injuries, physical pain, and mental anguish caused and alleged to have been suffered by him in a wreck while in the employment of appellant as engineer of one of its engines on the 30th day of January, 1900, of which respondent was in charge at the time.

The material averments of the complaint, briefly stated, are that on or about the 15th day of January, 1900, while acting as a locomotive engineer, he discovered that his engine was in need of repair by reason of the fact that the springs connecting with the bolsters supporting the tank on the

tender had become weakened from use, so that the tank was permitted to roll from side to side when the engine was in motion; that upon discovering the condition of the springs he notified E. Gest, the general manager of appellant, of such condition, and the effect thereof, and requested him to have them repaired; that about the same time he gave a similar notice to and made the same request of E. Smith, appellant's master of transportation; also at the same time notified Gest and Smith of what' was necessary to remedy the defect, namely, to fasten pieces of iron upon the ends of the bolsters, so as to prevent the tank from rolling, and by attaching safety chains, one at each corner of the truck, to prevent the trucks from turning under the tender.

Thereupon Gest and Smith informed respondent that the engine would be repaired as requested.

Shortly thereafter, and on the 30th day of January, 1900, while respondent was running the engine, and by reason of the defect, the tank rolled to such an extent that the front bolster of the tender caught in the frame of the truck of the tender in such a way that when the tank rolled in the opposite direction it lifted the truck from the track, and the truck turned under the tender, causing a derailment of the engine, throwing it over an embankment, and throwing plaintiff from the engine so that he fell beneath a portion thereof, and was injured to the extent of having two ribs on the left side broken and crushed into the left lung, the muscles of the right arm bruised and burned, a blow received upon the head, causing the right ear to become affected, so that it became necessary to lance the drum thereof; that the injury was caused to respondent by reason of the negligence of appellant in failing to repair after being notified by respondent of the defect.

The answer of the appellant put in issue all the material allegations of the complaint, and, in addition thereto, set up other defenses not necessary to be stated, as no questions are involved in this appeal under the same.

The case was tried before a jury, and a verdict in favor of the respondent returned for $15,500 damages. From the judgment rendered thereon, and from the order denying appellant's motion for a new trial, this appeal was taken.

The material facts controlling the questions made on this appeal under the assignment of errors are as follows: The respondent, at the time of the trial, was 37 years old. During a period of fifteen years preceding he was a locomotive engineer continuously in the employment of the appellant. On or about the ....... day of January, 1900, he discovered that the tank of the tender of the locomotive which he was running was rolling from side to side, caused by a gradual weakening of the springs under it from use, and that there was danger that the bolster supporting the tank would catch under the arch bar of the truck, and the tank rolling in the opposite direction would lift the truck from the track and derail the tender.

On or about the 21st day of January, 1900, respondent called the attention of the train master and general manager of the appellant to the defect, and at the same time explained what was necessary to remedy it. The train master at that time informed respondent that he would see the general manager, and have it fixed. It required two days to make a trip over appellant's road from Reno and return.

On or about January 25, 1900, the respondent went to the office of appellant's general manager, and notified him that the tank was rolling too much, and that it ought to be fixed right away. The general manager informed him that he would have the needed repairs made right away. Relying upon the promises of the officers of appellant, the respondent continued to run his locomotive until the 30th day of January, 1900, at which time, on his return trip to Reno, when coming down a grade upon a curve in the road at the usual rate of speed, the tender was derailed from the defect, the engine thereby thrown from the track over an embankment and upon the respondent, inflicting the injuries complained of.

The following injuries to respondent were occasioned in the wreck: A blow upon his head, causing almost deafness of a permanent character in his right ear; a burn upon his right leg; a burn upon his right arm; two ribs broken, detached from the sternum, and depressed upon the left lung; a permanently painful sprain and separation of the muscular fibers of the back, rendering it permanently weak, causing lateral curvature of the spinal column, and permanently dis-

abling respondent from following his avocation of locomotive engineer or performing ordinary manual labor.

There was evidence before the jury tending to show that respondent's hearing would gradually grow worse, and that the injury to the muscles of the back would cause continuous pain in the future.

There was also evidence tending to show that respondent's earning capacity as a locomotive engineer was about $100 per month. The engine and tender in use at the time of the wreck were practically new, having been in use since the 13th day of December preceding the accident.

When the cause was called for trial, the appellant applied to the court for a continuance. The application was based upon the absence of a witness who was sick. The refusal of the court to grant a continuance has been assigned as error.

It appears from the record that the witness on account of whose absence the continuance was sought was not present when the accident causing respondent's injuries happened, and was not even at that time within this state. His knowledge of the facts expected to be proven by him as set out in the affidavit in support of the motion could have been based upon hearsay alone, and such testimony was not even admissible.

The other testimony of the absent witness, relating to the incompetency of the respondent to properly and skillfully run, operate, and control a locomotive engine with a train of cars thereto attached with compressed air by means of a Westinghouse air brake, was not material to any issue made by the pleadings (Comp. Laws 1900, sec. 3255); and, even if material, the record shows that such expert testimony could have been supplied by other witnesses familiar with the use of such mechanical appliances. It appearing that there was no abuse of discretion in the refusal to grant the continuance (8 Enc. Pl. & Prac. 828; *Choate* v. *Bullion Mining Co.*, 1 Nev. 73), the action of the trial court thereon must be sustained.

Upon the facts stated, the appellant contends that continuance in the service by respondent notwithstanding the promise of appellant to repair as a matter of law was such contributory negligence as to defeat his claim for damages.

For this reason it is earnestly insisted by appellant that the verdict is against both the law and the evidence.

While it may be true that it is the duty of the court in a proper case, upon the facts found, to declare as a matter of law that there was such contributory negligence as would relieve the master of all legal liability, yet such rule should be applied only in cases where, from the facts found, such inferences only can be drawn.

The general rule applicable to cases of this character, established by the great weight of authority, is that, if the servant, noting a defect in the machinery, complains to the master of such defect, who promises that such defect shall be remedied, the servant may, in reliance upon the promise, continue in the service for a reasonable time thereafter without thereby assuming the risk, provided the danger is not of so imminent and immediate a character that a person of ordinary prudence would refuse to continue in the service. (*Hough* v. *Railroad Co.*, 100 U. S. 215, 25 L. ed. 612; *Stephenson* v. *Duncan*, 73 Wis. 404; *Manufacturing Co.* v. *Morrissey*, 40 Ohio St. 150; *Laning* v. *Railroad Co.*, 49 N. Y. 521; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Conroy* v. *Vulcan Iron Works*, 62 Mo. 35; *Greenleaf* v. *Railroad Co.*, 33 Iowa, 52; *Indianapolis Railway Co.* v. *Watson*, 114 Ind. 20; *Railway Co.* v. *Ott*, 11 Ind. App. 564; *Marsh* v. *Chickering*, 101 N. Y. 396; *Lyttle* v *Railroad Co.*, 84 Mich. 289; *Missouri Furnace Co.* v. *Abend*, 107 Ill. 44; *Linch* v. *Manufacturing Co.*, 143 Mass. 206; *Railroad Co.* v. *Bingle*, 91 Tex. 287; *Parody* v. *Railroad Co.*, (C. C.) 15 Fed. 205.)

Upon the authorities above cited is also based the general rule that the time in which the servant is justified in continuing in the service in reliance upon such promise without assuming the risk is such a period as would not preclude all reasonable expectation that the promise might be kept, and this is ordinarily a question for the jury.

We cannot, therefore, hold, as a matter of law, neither are we able to say as a matter of fact, upon this record, as against the verdict of the jury, that the danger was so imminent and immediate that the respondent, as a prudent man, should have refused to continue in the service notwithstanding appellant's promise to repair.

As a matter of fact, the tank set up on springs, when filled with water and fuel, would necessarily roll to some extent when running upon the road. The tender was new, and had been used only a few weeks before the accident. The rolling of the tank was the result of the gradual weakening of the springs from use. When respondent first called the attention of appellant's officers to the defect, it was only "getting dangerous." That the danger was not imminent and immediate at that time appears from the fact that he continued to run the engine and tender without accident. Even after he thought it was rolling too much, and had notified appellant's officials on the 25th day of January, he continued to run it without accident.

The danger, therefore, at the time the promise was made, was not imminent and immediate, but, measured by the defect shown, was progressively dangerous. It will not do to say that because respondent knew the machinery was getting dangerous, and because the accident did happen, as a matter of law and a matter of fact the danger was immediate and imminent. To so hold would absolutely destroy the legal effect of the master's promise under the rule stated. (*Conroy* v. *Vulcan Iron Works*, 6 Mo. App. 102.) Under the facts of this record it was for the jury to say, under the rule stated, whether the danger was so imminent and immediate that the respondent, as a reasonably prudent man, would have refused to continue in the service notwithstanding appellant's promise to repair, and whether he did continue under such promise such a period of time as to preclude all reasonable expectation that the promise would be kept.

It is next urged by appellant that the damages awarded are so excessive as to appear to have been given under the influence of prejudice. There was evidence showing that as the result of the accident the respondent, who was about 36 years of age, received a blow upon his head, causing permanent partial deafness of the ear, a burn upon his right leg, a burn and bruise upon his arm, two ribs broken from the sternum and depressed upon the lung, a permanently painful strain and separation of the muscular fibers of the back, rendering it permanently weak, and causing a lateral curva-

ture of the spinal column, permanently disabling respondent from following his avocation as a locomotive engineer, or performing ordinary manual labor. There was also evidence tending to show his earning capacity as a locomotive engineer. The jury was justified in taking into consideration all these facts in estimating the amount of damages, notwithstanding there was evidence tending to show that the injuries were neither so extensive, permanent, nor painful as claimed by respondent.

"There being no absolute fixed legal rule of compensation, appellate courts ought not to interfere with the verdict unless it clearly appears that there has been such a mistake of the principles upon which the damages were estimated, or some improper motive or bias indicating passion or prejudice upon the part of the jury." (*Solen* v. *Railroad Co.*, 13 Nev. 138.)

Taking all these facts into consideration, we cannot say that it clearly appears that there has been such a mistake of the principles upon which the damages were estimated or some improper motive or bias indicating passion or prejudice upon the part of the jury.

"The amount of the verdict—although perhaps greater than we would have given—is not, in our opinion, inconsistent with the exercise of an honest judgment upon the part of the jury, whose special province it was to determine this question." (*Solen* v. *Railroad Co.*, *supra.*)

An examination of the other assignments relating to the exclusion and admission of evidence convinces us that they are without merit, and therefore require no notice in this opinion.

The judgment and order appealed from are affirmed.

BELKNAP, J.: I concur.


FITZGERALD, J.:

I dissent. In two instances fatal errors were committed at the trial: (1) Appellant's motion for a continuance should have been granted, the showing therefor being sufficient. The case cited in the prevailing opinion, to wit, *Choate* v. *Mining Co.*, 1 Nev. 73, is against, instead of in

favor of, the doctrine it is cited to support. And (2) in several instances appellant's testimony was erroneously ruled out.

BY THE COURT:
Rehearing denied.

FITZGERALD, J.: I dissent.