## WILCOX v. CHICAGO & N. W. RY. CO.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. November 9, 1901.)

SETTLEMENT—CLAIM FOR PERSONAL INJURY—RESCISSION FOR MISTAKE.

Complainant, while a passenger on defendant's railroad, was thrown down in a car, and her hip was fractured. She was attended by her own physician, who was also defendant's local physician. A week after the injury she was visited by the physician and a claim agent of defendant, and a settlement was made of her claim for damages against defendant, and she signed a release. She was then 65 years old, by occupation a nurse, and dependent on her earnings for support. The principal question with her in making the settlement was the length of time the injury would incapacitate her from following her employment, and she was led to believe from the statements made by the agent and the opinion given by the physician that it would not exceed a year, and the settlement was made on that basis. In fact, she did not recover the use of her limb, and was permanently incapacitated from following her occupation. *Held*, that she was entitled to a rescission of the contract of settlement on the ground of mistake, and to a cancellation of the release, conceding that all parties acted in good faith.

In Equity. Suit for rescission of contract of settlement.

Caldwell & Walters, for complainant.

Hubbard, Dawley & Wheeler, for defendant.

SHIRAS, District Judge. This is a suit in equity brought for the purpose of securing the rescission and cancellation of a written agreement of settlement entered into, under date of March 1, 1898, between the complainant and the defendant railway company, whereby, in consideration of the payment of $600, the complainant released the railway company from all claims or demands "by reason of in-

juries received by me on or about the 22nd day of February, 1898, at Belle Plaine, Ia., at which time and place, while a passenger on one of said company's trains, I was thrown to the car floor, and my left hip was fractured, I received a severe nervous shock, and I was otherwise injured." It appears from the evidence that the complainant, while a passenger on the train upon defendant's line of railway at Belle Plaine, Iowa, was injured substantially as recited in the release above cited; that she was taken on the next day to her home, in Marengo, and on the succeeding day the fracture of the limb was set by Dr. Thompson, who was the complainant's physician, and also the local surgeon of the defendant company. A week from that date the complainant was visited by E. W. De Moe, a claim agent of the defendant, accompanied by Dr. Thompson; and after some discussion a settlement of complainant's claim for damages was reached upon the basis of the company settling the charges of the doctor in attendance, paying to Mrs. Blodgett, the nurse in charge of complainant, the sum of $100, and to the complainant the sum of $500; and, the payments having been made as agreed upon, the complainant signed the release already referred to, under date of March 1, 1898. In February, 1900, the complainant brought an action at law in the district court of Tama county against the company to recover damages for the injuries received while a passenger on the defendant's train; and thereupon the railway company removed the case into this court, and in its answer pleaded, among other matters, the settlement and release signed by complainant as a bar to the action. Thereupon the complainant filed the bill in this case for the purpose, as already stated, of securing the rescission of the contract of settlement, and, as grounds of such rescission, avers that when the release was signed she was sick in body and mind, and incapable of entering into a valid contract; that it was represented to her by the attending physician and surgeon that her injuries were but temporary, and that in less than a year she would be completely cured; that it was represented to her that the company was not in fact liable to her for her injuries; that these statements were made for the purpose of deceiving and misleading her; that they were relied upon and believed by her, and she was induced thereby to sign the release, but did not know its contents, and that she would not have signed the paper but for the belief, induced by such representations, that she would be permanently cured within a year; that in fact she has lost the use of her limb, and is unable to walk, and is permanently injured. The evidence shows that at the time of the accident the complainant was 65 years of age, and her occupation was that of a nurse, receiving compensation at the rate of $10 per week, and being so employed more than one-half of her time. It further appears that at the time the settlement was reached there were present with the complainant Dr. Thompson, the claim agent, De Moe, and Mrs. Blodgett, sister of the complainant. The evidence shows that much discussion was had over the question of settlement; that the first offer made on behalf of the company was to pay the sum of $300; that this was refused, and finally an agreement was reached on the terms already stated. The evidence fails

to show that complainant was not then in possession of her mental faculties. She admits that she signed the release, and that it was read to her by the claim agent, and there is nothing in the evidence which tends to support the charge of deceit or fraud upon part of the company's agent. It is claimed in the bill and in the testimony of complainant that she was induced to settle for the sum received by reason of the representation to her that she would recover and be able to carry on her occupation within a year. Upon this point the complainant testified that:

"They offered me $300 to settle with them, and I asked them about,—if I was to get well; when I was to get well; and I wanted to get well. I told them that was the main thing. He asked me what my occupation was. I didn't know the extent of my injuries, and they seemed to think I would get well without any trouble, and asked my occupation. I told them I was a nurse, and I had $10 a week when I was able to do anything. That is what I had. Q. Well, did they tell you when you would be well? A. They said there was no doubt but I would be well within a year. Q. Who said that to you? A. The agent. Q. Did the doctor say anything? A. They asked the doctor, and he said, 'No doubt of it.' "

Dr. Thompson testifies that:

"The question was asked me of how long I thought that she would be incapacitated, and I said she would not be able to do anything at least for a year; the injury was very slow to repair, if it did repair; and that she could not expect to be able to do anything inside of that time, and that there was no certainty of her ever entirely recovering; that those injuries resulted generally in a permanent disability."

What the witness meant by the statement that injuries of that character resulted generally in a permanent disability is shown by the statement subsequently made, "That the cases that I have treated have all resulted in recovery, with a partial halt in the gait." In other words, the statement of the doctor was to the effect that a complete or entire recovery was not probable, in that she would suffer from a partial halt in her gait, and that she could not expect to be able to do anything inside of a year.

The agent of the company, E. W. De Moe, who procured the execution of the release, testifies that:

"To the best of my recollection, it was conceded by all of us present there that the injury was a serious one, and the principal objection Mrs. Wilcox seemed to have against signing a release was the fact that she would probably be laid up for a long period of time. The matter was referred to Dr. Thompson in an indefinite sort of way, and just what was said by him at that time I don't remember. The drift of the conversation was that in all probability Mrs. Wilcox would be laid up at least a year,—be incapacitated for work,—and I made the suggestion that I didn't want to wait that long to adjust the case; and we figured, in a general way, about what she could earn, taking a year as a basis, and I think it amounted to something like $500."

From the evidence it fairly appears that the paramount thought in the mind of Mrs. Wilcox was how long would she be incapacitated for work. She was a widow, dependent on her own work as a nurse for her support. Naturally during the week that had intervened since her injury the thought ever present with her was, "How soon can I hope or expect to be about again?" so as to resume her occupation as a nurse. This was the query which she anxiously

pressed upon the agent and the doctor, as their own testimony shows. Their answer was, in effect, that the incapacity to labor would not extend beyond a year. It will be noticed that the plaintiff did not dwell upon or refer to the physical pain she was suffering. Her anxiety was to secure a sum that would make up the loss from her usual earnings during the period she would be incapacitated from labor, and the agent of the defendant testifies that a year was taken as the basis for figuring the amount to be paid. It is proven beyond fair question, therefore, that the plaintiff was led to accept the amount paid her in the belief that she would sufficiently recover from her injury in the space of a year to be then able to resume her occupation as a nurse. In this belief, and on that basis, she made the settlement. It now appears that she did not recover within a year. Her injury is undoubtedly permanent, and she will never be able to resume her occupation as nurse, as she cannot walk. but is wheeled about in an invalid's chair. While the evidence does not show that the defendant's agents are liable to the charge of fraud or wrongdoing, nevertheless it is apparent that in the matter of the settlement the plaintiff was at a disadvantage, in that she was practically without assistance or competent advice at the time it was made. As already said, it is entirely clear that the plaintiff was seeking to obtain compensation for the time she would be unable to earn her living. Upon this question of the probable time she would be incapacitated, she was compelled to rely upon the statements made her, and upon the opinion of the doctor. As the agent of defendant testifies, the question was referred in a general way to Dr. Thompson, and as a result a year was accepted as the basis of the settlement; that is, that a year would cover the time the plaintiff would be unable to follow her usual occupation. Undoubtedly the settlement was reached on this basis, and unquestionably the parties were mistaken in the substantial fact upon which the terms of settlement were reached. Granting that all parties were acting in the utmost good faith, it is nevertheless true that the plaintiff was induced to make a settlement upon a mistaken basis of fact, which misconception of the situation was largely, if not wholly, due to the statements and opinions expressed by the parties acting for and representing the defendant. Under these circumstances, the court is justified in holding that the settlement was made by the plaintiff under a clear mistake of the actual situation, and that this mistake was caused by the representations of the defendant's agents, made under such circumstances as that the defendant must be held responsible therefor, even though it be true that in one sense the representations referred to the future, and involved a contingency.

The plaintiff has tendered back to the defendant the money paid upon the settlement, and has therefore done all that is necessary to secure a rescission of the contract of settlement, and a decree of rescission as prayed for will be entered in the case.