THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. GEORGE W. SLEDGE.

No. 13,444. (74 Pac. 1111.)

SYLLABUS BY THE COURT.

1. DAMAGES—*Assumption of Risk — Servant Relieved by Promise of Master.* The general rule is that a servant who continues the use of a defective appliance after notice of its defective condition assumes the risk of such service with its increased danger; but where the servant continues the use of such defective appliance because of a promise on the part of the master that the defect will be repaired, the master himself assumes the added risk, and the servant is relieved therefrom for a reasonable length of time thereafter.

2. ———— *Cause of Defect Immaterial.* This rule obtains as well where the defective condition is the result of the servant's own carelessness or negligence as where it results from other causes.

3. ———— *Recklessness of Servant is a Question for the Jury.* This rule finds an exception in cases where the defect is so obvious, and the danger therefrom so imminent, that none but a reckless man would continue the service. This is a question, however, for the jury, and their verdict thereon, under proper instructions, is conclusive.

4. ———— *$7000 for an Arm is Not Excessive.* The plaintiff was a young man, twenty-three years old, earning from seventy-five dollars to eighty dollars per month. By the injury complained of he lost his left arm above the elbow. *Held*, that a judgment for $7000 is not so excessive as to require a reversal.

21—68 KAN.

Error from Neosho district court; L. STILLWELL, judge. Opinion filed January 9, 1904. Affirmed.

*A. A. Hurd*, and *O. J. Wood*, for plaintiff in error.
*C. A. Cox*, and *B. F. Shinn*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: The defendant in error had judgment in the court below, and the railroad company prosecutes this proceeding to reverse it. The facts, briefly stated, are as follows: Sledge had been in the employ of the railroad company about a year before the injury complained of. Most of the time he was a brakeman, but at the time of his injury, and for a month prior thereto, he was a switchman in the yards at Pittsburg. Together with a switch-engine crew, he went out to do some switching on the morning of December 23, 1901. The engine was properly equipped with a foot-board in front and a hand-rail by which switchmen were enabled to steady themselves while riding upon the foot-board.

Through the fault of Sledge the post which held the left end of this hand-rail in place was bent and finally broken off, and the hand-rail left in such condition thereby that its continued use was dangerous. Soon thereafter the attention of the master mechanic was called to the condition of the hand-rail by the engineer and its danger pointed out. The master mechanic, who represented the company for that purpose, directed the engineer, in the presence of Sledge, to go ahead and use the engine in its defective condition and he would have it repaired. This the crew did, the engineer at different times cautioning Sledge to be careful, and the use was continued through the bal-

ance of that day without accident.   A short time after
the same crew commenced work with the defective
engine the next morning, Sledge, after having thrown
a switch, walked around from the left-hand (or fire-
man's) side of the engine, got upon the foot-board and
passed across to the right-hand side.   As they were
nearing a switch upon which they were to run the
engine, Sledge, having hold of the hand-rail with his
left-hand near the post which held the right-hand end
of the rail, raised his right hand to signal the engineer
to slow down.   This was done easily and quickly and
it gave Sledge a pitch forward ; the hand-rail turned
because of its defective condition, Sledge was thrown
off, and the engine cut off his left arm.   He had judg-
ment for $7000 for the injury sustained.

That the injury occurred and that it was in conse-
quence of the defective condition of the hand-rail are
undisputed.   That it was agreed that this defective
condition should be remedied must be considered to
have been settled by the verdict of the jury, although
there was conflicting evidence.

It would seem that the case would fall under, and
be resolved by, the general rule that where an em-
ployee is induced to continue the use of defective ap-
pliances under a promise from the master that it
should be repaired he would not be deemed to be
guilty of contributory negligence because of its use
during a reasonable time after the making of such
promise.   (*Rush v. Mo. Pac. Rly. Co.*, 36 Kan. 129, 12
Pac. 582 ; *A. T. & S. F. Rld. Co. v. Schroeder*, 47 id.
315, 27 Pac. 965 ; *Morbach v. Mining Co.*, 53 id. 731, 37
Pac. 122 ; *Railway Co. v. Puckett*, 62 id. 770, 64 Pac.
631 ; *A. T. & S. F. Rld. Co. v. Sadler*, 38 id. 128, 16
Pac. 46, 5 Am. St. Rep. 729.)   It is claimed, how-
ever, that this case, because of its facts, is taken out

of, and becomes an exception to, this rule, the position of plaintiff in error being stated as follows :

"We do not dispute the legal proposition that where a defective appliance is furnished an employee and that by coming in contact therewith knowledge on his part is obtained of its condition, and complaint is made by him to the master and a promise is made to repair it, he might continue to use it by the exercise of care until such repairs are made, if made within a reasonable time, and not assume the risks of injury occasioned thereby, but it seems to us that the facts, as disclosed by the record in this case, did not bring it within the purview of those authorities and decisions."

In a more or less general way the reasons assigned for this exception are two : (1) The defect was occasioned by the plaintiff's own carelessness and negligence ; (2) the defect was so obvious, and the danger so imminent, that plaintiff was not warranted in relying upon the promise of the railroad company to repair, but was guilty of contributory negligence in continuing in the service, notwithstanding the promise to repair. We are unable to see in the present case how the first reason can make an exception to the rule. It is the fact of the defect and knowledge of it by the employer which count, and not the cause of it. So if the defect was caused by the servant's own wrong but he brings the knowledge of its existence to the master and the master promises to repair, the servant assumes no other or greater risk by continuing its use than he would if the appliance had worn out in the service or had otherwise become defective. Of course, had the defective condition not been communicated to, or known by, the company, or had no promise to repair been made which induced the plaintiff to continue its use, there would have been no opportunity for the application of the rule.

But perhaps the suggestion that the defect was caused by the plaintiff's own carelessness is thrown in more to give weight to the second reason above stated, than to have moment of itself.

The general rule is that an employee who remains in the service after notice of a defect which augments the danger of such service assumes the risk of the service as increased by the defect, but this general rule finds an exception where the master, knowing of the defect, promises to repair it. In such case the servant may, relying upon such promise, continue in the service for a reasonable time without the assumption of the additional risk. The reason for this exception probably rests in the fact that the master, in order that the servant may continue the service and thereby promote the master's business, by this promise to repair himself assumes the added risk, or at least it relieves the servant from its assumption.

Of course, if the danger from the defect be so open and obvious that no one of ordinary care and prudence would proceed, the promise of the master will not avail to relieve the servant, the rule being that the servant is not relieved from the assumption of the risk where the defect is so glaring that, with the utmost care and skill, the danger is still imminent— so much so that none but a reckless man would incur it. (2 Bail. Pers. Inj. Rel. to Mast. & Serv. § 3117.) So the defect must be something more than apparently dangerous in order to charge the servant, for it is because it is apparently dangerous that the master assumes risk. Whether the defect is of so glaring a character, and the danger in its use so imminent, that the servant is chargeable with negligence by its use, notwithstanding the assumption by the master, is

however, like most other questions of negligence, for the jury and not for the court.

. Quotations might be made from many cases sustaining this rational rule, but we content ourselves with the use of two from recognized authorities. In *Hough v. Railway Co.*, 100 U. S. 213, 225, 25 L. Ed. 612, it was said :

"We may add, that it was for the jury to say whether the defect in the cowcatcher, or pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without it being removed. If, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery, upon the ground of contributory negligence."

The supreme court of Illinois, in *Drop Forge and Foundry Co. v. Van Dam*, 149 Ill. 337, 36 N. E. 1025, said :

"Where a master, on being notified by the servant of defects that render the service dangerous, expressly promises to repair the defect, or to do what is equivalent thereto, the servant may continue in the employment for such a period of time as it would be reasonable to allow for the performance of the promise. In such case, if injury results, the servant may recover, unless the danger is such that no prudent person would continue to perform the service. The servant's knowledge of the defect is not, under such circumstances, conclusive of want of due care on his part, because the promise of the master to remove the danger justifies him in continuing in the service, and relieves him of the charge of negligence. If the master fails to make his assurance good, he is chargeable with a failure to exercise ordinary care.

"It is, however, a question of fact for the jury to determine whether the defect is so serious that a pru-

dent person would not continue in the performance of the required work.''

See, also, *Missouri Furnace Co. v. Abend*, 107 Ill. 44, 47 Am. Rep. 430 ; *Taylor v. N. C. O. Ry.*, 26 Nev. 415, 69 Pac. 858 ; *Hawley v. Northern Central Railway Co.*, 82 N. Y. 370 ; *Greenleaf v. The Dubuque & Sioux City R. R. Co.*, 33 Iowa, 52 ; *Jensen v. The Hudson Sawmill Co.*, 98 Wis. 73, 73 N. W. 434 ; *Leonard v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 63 Minn. 489, 65 N. W. 1085. Many text-writers hold to the same view. In the case at bar, in an unexceptionable instruction, the court submitted this question to the jury, which by their general verdict found that the defect which caused the injury to the plaintiff was not in fact what plaintiff in error contends it to have been as a matter of law—so open and obvious that a man of ordinary care and prudence would not have used it. The jury's answer concludes the controversy.

There is a distinction found in some authorities in the application of the foregoing discussed principles where the appliances are simple ones, such as ordinary ladders or skids for the moving of heavy objects. (2 Bail. Pers. Inj. Rel. to Mast. & Serv. § 3102 *et seq.*) How far this distinction ought to be carried is not necessary for us here to discuss. It would seem, though, from *S. K. Rly. Co. v. Crocker*, 41 Kan. 747, 21 Pac. 785, 13 Am. St. Rep. 320, where so simple an instrument as a hammer was under consideration, that this court has not been disposed to push the distinction far.

Complaint is made that the verdict ought not to be sustained because it is excessive. The left arm was severed above the elbow. The sum of $7000 was allowed. The plaintiff was twenty-three years old, earning at his business seventy-five dollars to eighty dollars

per month.   We cannot say, as a matter of law, that the verdict is so excessive as to require us to interfere.   Many verdicts, perhaps, all things considered, larger in amount, have been sustained by this court. (*A. T. & S. F. Rld. Co. v. Moore*, 31 Kan. 197, 1 Pac. 644; *Mo. Pac. Rly. Co. v. Mackey*, 33 id. 298, 6 Pac. 291; *K. C. Ft. S. & G. Rld. Co. v. Kier*, 41 id. 661, 21 Pac. 770, 13 Am. St. Rep. 311; *U. P. Rly. Co. v. Mitchell*, 56 id. 324, 43 Pac. 244; *U. P. Rly. Co. v. Young*, 19 id. 488.)

We find no error, and hence affirm the judgment of the court below.

All the Justices concurring.