**CHICAGO, R. I. & P. RY. CO. v. ROGERS.**

No. 6638—Opinion Filed July 11, 1916.

Rehearing Denied Sept. 26, 1916.

(159 Pac. 1132.)

**1. Negligence — Province of Court and Jury —Directed Verdict.**

In cases involving negligence, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court. Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury.

**2. Same.**

There was conflicting evidence in the case as to whether or not the defendant was primarily negligent, and this given state of facts was such that reasonable men might fairly differ upon the question as to whether there was primary negligence on the part of the defendant or not, and hence the question of primary negligence on the part of the defendant was a question of fact to be considered, found, and determined by the jury in the light of all the accompanying facts and circumstances touching this question in evidence before them upon the trial of this cause, under proper instructions from the court.

**3. Master and Servant—Injuries to Servant— Duty of Master.**

It is necessary that you go into the facts of each individual case to ascertain whether or not negligence existed. In the case at bar the defendant owed the plaintiff the duty to furnish him with a reasonably safe place within which to work and with reasonably safe appliances to work with. In the case at bar the defendant failed to perform that duty. In the case at bar the plaintiff received an injury resulting from such failure on the part of the defendant.

**4. Same—Assumption of Risk.**

Where a master promises to remedy a defect, the servant does not assume the risk of injury therefrom by remaining in his employment for a reasonable time after such promise. The question whether plaintiff assumed the risk by remaining at work in a dangerous place is for the jury. Where plaintiff had complained to his foreman that premises were unsafe, and the foreman promised to refer the matter to the master mechanic, and later informed plaintiff that the master mechanic had promised that the defect should be remedied, the questions whether the master mechanic was informed of such complaint and promised to remedy the defect and his authority to make the promise were for the jury.

**5. Servant's Case—Evidence.**

In this case the plaintiff had knowledge of the danger involved, had advised the defendant thereof, and the defendant had promised the plaintiff to remedy the matters complained of. The plaintiff gave the names of the parties to whom complaint was made and the names of the officers who promised to make the corrections, and defendant failed to offer any testimony whatever denying that said promises were made and did not even attempt to dispute the same.

**6. Master and Servant—Injuries to Servant— Care.**

It is the duty of the master to furnish his servant with a reasonably safe place to work and with reasonably safe tools and appliances with which to work, taking into consideration the nature and character of the work to be performed and the dangers therefrom, and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation.

**7. Same—Instructions.**

Instructions Nos. 3 and 7, given by the court, in which the jury are told "that it was the duty of the defendant railway company to use reasonable and ordinary care to provide a safe place within which its employes were to work and to use reasonable and ordinary care to provide suitable and proper implements with which such employes were to work," etc., held proper under the facts proven in this case, and under the law as laid down by this court in Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747, Choctaw Elec. Co. v. Clark, 28 Okla. 399, 114 Pac. 730, and Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403.

**8. Same—"Assumption of Risk"—Contributory Negligence—"Assumed Risk."**

"Assumption of risk" and "contributory negligence" are not, synonymous. The defenses of "assumed risk" and "contributory negligence" are separate and independent, the former arising out of contractual relations, and the latter not. "Assumed risk" and "contributory negligence" are distinct doctrines of law. The instructions examined as to this question, and held to be sufficient and proper under the facts of this case.

**9. Compromise and Settlement—Misrepresentations—Relief.**

The plaintiff was advised by Mr. Brady, the claim agent, that the physicians of the company had reported the injury as merely a skin wound, and that it was not permanent. He was advised by Dr. Tye and Dr. Border, physicians of the company, that the injury was merely a skin wound, and not permanent. He was advised by Dr. Tye that he would have a good leg and would be able to

perform labor to the extent and in the capacity he did prior to the injury. The plaintiff was a mere employe of the company. He had no knowledge of medical science. He could not judge of the effect of a burn as to its permanency or its temporary character. He relied upon the statements of the company's physicians to the effect that he would have a good leg, and, believing and relying upon such statements, executed the release in question. In such cases innocent misrepresentations made in good faith and under an honest belief at the time made that they are true, on the one hand, and relied and acted upon in good faith and under an honest belief of their truth, on the other hand, as well as statements made which are intentionally false and relied upon by the party executing a release, may equally be made the basis of relief from such releases.

(Syllabus by Davis, C.)

Error from District Court, Stephens County; Frank M. Bailey, Judge.

Action by Emmett Rogers against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff, Emmett Rogers, brings this action seeking to recover of the defendant, the Chicago, Rock Island & Pacific Railway Company, the sum of $20,150, alleging that on the 11th day of December, 1910, while plaintiff was in the employ of the defendant company in the capacity of caretaker of certain locomotives of the defendant company in the yards of the defendant company at Mangum, Okla., he was requested to build a fire in the fire box of a certain locomotive engine; that at said time said locomotive was outside of the roundhouse and unprotected in any way from the wind; that the defendant furnished for the building of such fire certain waste and combustible oil which plaintiff was requested to use in the starting of said fire, and that while in the performance of his duty, and on account of the combustible character of the material used and furnished to him in building said fire, and on account of the unprotected condition of said engine from the weather and strong wind, and on account of no blower being furnished to plaintiff with which to start said fire, and while acting with care and caution, a certain gust of wind swept through said cab of said locomotive while the plaintff was in the act of building said fire, blowing the burning oil and waste against plaintiff, thereby setting fire to plaintiff's clothing, from which he received severe and serious burns and injuries to his right limb; that such injuries were caused and occasioned by reason of the carelessness and negligence of the defendant in failing to use reasonable and ordinary care to furnish a safe place within which plaintiff should work; that by reason of such injuries plaintiff has suffered great mental anguish and impairment of his earning capacity and loss of time and money expended in securing necessary medical attention and services—all to his great hurt and damage in the sum prayed for, to wit, $20,150.

The defendant answers, and denies the allegations of the plaintiff's petition not specifically admitted, and admits that the plaintiff was the employe of the defendant company, and further says that, if plaintiff was injured, it was by reason of his own negligence and carelessness, and that the defendant was in no wise negligent and careless, nor is it liable in any degree for the injuries complained of by plaintiff, and that, if such plaintiff was injured, it was occasioned by the risk incident to plaintiff's work, and was assumed by plaintiff. The defendant further says that, if the plaintiff was injured, such injury has been fully adjusted, adjudicated, and settled between plaintiff and the defendant by reason of a certain release contract entered into between the plaintiff and defendant; wherefore the defendant prays the judgment of the court.

The plaintiff, replying, denies the allegations of the defendant's answer not specifically admitted, and says that, while plaintiff did execute such release agreement, such release agreement was signed and executed by reason of false and fraudulent representations of the defendant company's agents and physicians, and that such representations caused plaintiff to mistake the nature of his injuries, and that the consideration therefor was greatly inadequate, and that other considerations formed a part and parcel of such agreement, and that same have not been fulfilled and have not been performed by the defendant, and that such release agreement is therefore invalid and in no wise binding on the plaintiff.

This cause was tried to a jury on the 14th and 15th days of November, 1913, resulting in a verdict in favor of the plaintiff and against the defendant for $1,001, upon which verdict judgment was duly entered, to reverse which this proceeding in error was brought by the defendant.

K. W. Shartel, C. O. Blake, R. J. Roberts. W. H. Moore, and J. G. Gamble, for plaintiff in error.

Bond, Melton & Melton, for defendant in error.

Opinion by DAVIS, C. (after stating the facts as above). The parties will be desig-

nated as in the court below. The questions presented for consideration are:

"(1) That said court erred in overruling the motion of the plaintiff in error for a new trial.

"(2) The court erred in overruling the demurrer of the plaintiff in error to the evidence of the defendant in error.

"(3) The court erred in refusing to give to the jury a peremptory instruction to return a verdict in favor of the plaintiff in error, as requested in defendant's requested instruction No. 1.

"(4) The court erred in refusing to give defendant's requested instruction No. 4.

"(5) The court erred in refusing to give defendant's requested instruction No. 5.

"(6) The court erred in refusing to give defendant's requested instruction No. 6.

"(7) The court erred in giving instruction No. 3 of its charge to the jury.

"(8) The court erred in giving instruction No. 6 of its charge to the jury.

"(9) The court erred in giving instruction No. 7 of its charge to the jury.

"(10) The court erred in giving instruction No. 11 of its charge to the jury."

The errors assigned and complained of by the defendant supra, 2 to 10, inclusive, are set forth and contained in the motion for a new trial. The question, then, is: Did the trial court err in overruling the defendant's motion for a new trial containing these specifications of error supra? Let us see.

"In cases involving negligence, when a given state of facts is such that reasonable men may fairly differ upon the questions as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court. Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury." Missouri, K. & T. Ry. Co. v. Shepherd, 20 Okla. 626, 95 Pac. 243; Harris v. Missouri, K. & T. R. Co., 24 Okla. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858; St. Louis & S. F. R. Co. v Loftis, 25 Okla. 496, 106 Pac. 824; Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153; St. Louis & S. F. R. Co. v. Copeland, 23 Okla. 837, 102 Pac. 104; Mean v. Callison, 28 Okla. 737, 116 Pac. 195.

There was conflicting evidence in the case as to whether or not the defendant was primarily negligent, and this given state of facts was such that reasonable men might fairly differ upon the question as to whether there was primary negligence on the part of the defendant or not, and hence the question of primary negligence on the part of the defendant was a question of fact to be considered, found, and determined by the jury in the light of all the accompanying facts and circumstances touching this question in evidence before them upon the trial of this cause, under proper instructions from the court. The trial court therefore committed no error in overruling the defendant's demurrer to the plaintiff's evidence, and in refusing to give the jury a peremptory instruction to return a verdict in favor of the defendant as requested in defendant's instruction No. 1, and in submitting the cause to the jury.

We will consider specifications of error numbered 2 and 3, that the court erred in overruling the demurrer of the defendant to the evidence of the plaintiff, and that the court erred in refusing to instruct the jury to return a verdict for the defendant, together. Counsel cite several authorities defining negligence, and then argue that no primary negligence was shown in this case. We think, and the jury found by their verdict, under the instructions of the court, that the plaintiff established that there was primary negligence on the part of the defendant by a fair preponderance of the evidence. The authorities cited by counsel define the law of negligence, but the facts involved in such cases are entirely different from the facts of the case at bar. It is necessary that you go into the facts of each individual case to ascertain whether or not negligence existed. In the case at bar the defendant owed the plaintiff the duty to furnish him with a reasonably safe place within which to work and with reasonably safe appliances to work with. In the case at bar the defendant failed to perform that duty. In the case at bar the plaintiff received an injury resulting from such failure on the part of the defendant. Counsel reasons by analogy and attempts to compare the building of a fire in a locomotive with the building of a fire in a cookstove or under a wash boiler. There is a marked distinction between building a fire in a cookstove and in a locomotive. There is a difference in the construction of a stove and a locomotive and a difference in the volume of the fire to be made. The fire box of a locomotive cannot be reached with the hand. It is several feet from the engine cab, and the fire must pass through a hole about the size of a hatband. In the case at bar it was necessary to throw burning waste through such hole three or four feet into the fire box with a whirlwind whistling through the cab of the engine. A cookstove fire may be started with a lighted match in the hand. You could not accomplish much trying to

throw a lighted match through the wind into the fire box of a locomotive. These were all questions to be submitted to the jury as was done in this case.

Counsel for the defendant further assert that at other points plaintiff fired engines in the open. The facts in this case show that the plaintiff was employed by the company at Chickasha, Okla., where he worked two-thirds of his time; that he fired engines at said point in the roundhouse; that roundhouses were made for the purpose of housing and firing engines; that he occasionally made trips out of Chickasha and remained overnight at different points, but he kept the fire in the engines used burning all night at most of the places. The facts further show that when the plaintiff in this case was located permanently at Mangum he advised the company of the danger of firing an engine in the open and secured two or three promises from the company that the roundhouse at said point would be opened in order that he might fire an engine in a safe place, and have a safe place in which to work.

The fact that an accident is unusual, unexpected, or even unheard of will not excuse the negligence which caused it. 26 Cyc. 1092; Doyle v. Chicago, St. Paul & Kansas City Ry. Co., 77 Iowa, 607, 42 N. W. 555, 4 L. R. A. 420; E. P. & N. W. Ry. Co. v. McComus, 36 Tex. Civ. App. 170, 81 S. W. 760. A railroad company is liable for injuries to a fireman where flames burst out of the fire box upon his opening the door thereof, on account of the use of fine and dirty coal, and catch his clothes on fire. 4 Thompson on Negligence, sec. 3939; M., K. & T. Ry. Co. v. Walker (Tex. Civ. App.) 26 S. W. 513.

The master owes to the servant the duty to furnish him with a reasonably safe building or other place in which to do his work, and is liable for injuries occasioned by negligence in this regard. 36 Cyc. 1209, 1213.

Where a master promises to remedy a defect, the servant does not assume the risk of injury therefrom by remaining in his employment for a reasonable time after such promise. 26 Cyc 1099, 1113; Neeley v. S. W. Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; Huber v. Jackson & Sharp Co., 1 Marvel (Del.) 374, 41 Atl. 92; McFarlan Carriage Co. v. Potter, 153 Ind. 107, 53 N E. 465; Foster v. Chicago Rock Island, 127 Iowa, 84, 102 N. W. 422, 4 Ann. Cas. 150; A. T. & S. F. Ry. Co. v. Sledge, 68 Kan. 321, 74 Pac. 1111; Louisville Hotel Co. v. Kaltenbrun (Ky.) 82 S. W. 378.

The question whether plaintiff assumed the risk by remaining at work in a dangerous place is for the jury. Swift et al. v. O'Neill, 187 Ill. 337, 58 N. E. 416; Harris v. Hewitt, 64 Minn. 54, 65 N. W. 1085; Oklahoma Constitution, sec. 6, art. 23.

Where plaintiff had complained to his foreman that premises were unsafe, and the foreman promised to refer the matter to the superintendent, and later informed plaintiff that the superintendent had promised that the defect should be remedied, the questions whether the superintendent was informed of such complaint and promised to remedy the defect and his authority to make the promise were for the jury. Swift et al. v. O'Neill, supra.

The question whether the person promising to remedy the defect is one having authority to do so is for the jury. Labatt on Master and Servant, secs. 511, 420; Swift et al. v. O'Neill, supra.

From the 1st of February to the 12th of April held not to be an unreasonable length of time to continue work, relying upon a promise to remedy a dangerous condition. Weber Wagon Co. v. Kehl, 139 Ill. 644, 29 N. E. 714.

A master mechanic has authority to promise repairs, and a promise to an employe in the presence of plaintiff is sufficient. A., T. & S. F. Ry. Co. v. Sledge, supra.

Three distinct promises were made to the plaintiff in this case, two by the master mechanic through Mr. Cleaver, the man under whom the plaintiff was working at Mangum. The third was made direct to the plaintiff himself by Mr. Sharp, the roundhouse foreman. Counsel for the company endeavored to argue that Mr. Cleaver only asked that the roundhouse be opened for the purpose of convenience, and not for safety. However, Mr. Cleaver refused to deny the statement of Emmet Rogers to the effect that the complaint was made on the ground that it was dangerous to fire an engine in the open, and Mr. Sharp, the officer who made the promise in person to Mr. Rogers, was not offered as a witness, and the testimony of the plaintiff as to the promise of Mr. Sharp is undisputed and unchallenged.

This disposes of assignment of errors 2 and 3.

Under assignment of error No. 4 defendant complains of the refusal of the court to give in charge to the jury instruction No. 4 asked for by the defendant, and which reads as follows:

"The court instructs the jury that an employe is held under the law of this state to have assumed the risk and hazard of injury resulting from open and obvious dangers in-

cident to his employment. You are therefore instructed that, although you should find that the defendant was negligent in requiring the plaintiff to build fires in engines while the same were out of doors, and that the injury suffered by plaintiff was the result of said negligence, nevertheless your verdict should be for the defendant, provided you further find that the condition under which he was required to work was known to the plaintiff, and the dangers in doing said work were appreciated and understood by him."

Instruction No. 4, supra, requested by counsel for the defendant, was not warranted by the law and the facts of the case, and was properly refused by the court. Plaintiff testified that the agents of the defendant company had promised to provide a safe place in which to work and safe appliances with which to work, and that, relying upon said promises, he remained in the employ of the defendant. This testimony is uncontradicted by any of the witnesses offered by the defendant. If the plaintiff, with full knowledge of the dangers of his employment, had remained in the employ of the defendant without objection or protest, and without a promise on the part of the company to reopen said roundhouse, the defendant would have been in a better position to contend for instruction No. 4, but, as the master lulled the servant into a sense of security by promises to supply the necessary safeguards, and failed to contradict the testimony of the servant with reference to such promises, it would be strange, indeed, to instruct a jury to find that, even though the defendant was negligent, the plaintiff nevertheless assumed the risk of injury resulting from such negligence.

The following instructions have been approved by appellate courts:

"The court instructs the jury that, if you believe from the evidence in this case that the proximity of said platform to the track and to the cars as they pass was plain and apparent, and the liability to injury therefrom was manifest, and that deceased knew of such proximity or by the exercise of care to avoid injury to himself might have known, and with such knowledge or opportunity of knowledge remained in defendant's employ and continued to work in the vicinity thereof without objection or protest and without promise of alteration of the platform, then plaintiff cannot recover in this action." Perigo v. Chicago, R. I. & P. R. Co., 52 Iowa, 277, 3 N. W. 44.

"The court instructs the jury that, if a brakeman on a railroad knows that the materials with which he works are defective and continues his work without objection and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risk of such defects, for the continuance of the brakeman in the employment is purely voluntary, and if

he so continues without objection with knowledge of the defects in machinery, he is presumed to have waived the right to insist upon indemnity for injuries resulting from such defect." Way v. Illinois Central R. Co., 40 Iowa, 341.

Practically the same instructions have been approved in Chicago & N. W. R. Co. v. Donahue, 75 Ill. 106, and in the case of Perigo v. Chicago, R. I. & P. R. Co., 52 Iowa, 276, 3 N. W. 43.

It will be noted from the above and foregoing instructions that an essential element was omitted from said requested instruction, namely, that the plaintiff remained in the defendant's employ and continued therein without objection or protest and without a promise to provide a safe place in which to work and safe appliances to work with.

In support of the assignment of error under discussion counsel cite the case of Osage Coal & Mining Co. v. Sperra, 42 Okla. 726, 142 Pac. 1040. Said case is not in point with the case at bar. In the case above cited all the conditions of which the plaintiff complained were obvious and well known to him when he commenced work, and at all times thereafter. He made no complaint about such conditions to his master. The master made him no promises to furnish a safe place in which to work and safe appliances with which to work. There is no question but what the instruction complained of in said case was incorrect. On page 1043 of said opinion the court uses the following language:

"Upon the whole we think it clear that the court erroneously instructed the jury so as to preclude the finding that the plaintiff assumed any risk, as against actionable negligence on the part of defendant, unless the place to work, and the tools and appliances with which to work, were found to have been reasonably safe."

No such instruction was given in the case at bar as the instruction complained of in the Osage Coal & Mining Company case. The case is wholly inapplicable to the issues involved.

The other authority relied on by counsel for the defendant is the case of St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 432. This case is not in point with the case at bar. The judgment in said case was affirmed, and not reversed. In said case the court uses the following language:

"The foregoing instructions given by the court, in the light of the authorities just quoted, appear free from reversible error on any point urged against them by defendant, although the jury is thereby informed that

the plaintiff's decedent 'did not assume any risk which might be caused by the negligence of defendant.' * * * "

Instruction No. 9 given by the trial court is as follows:

"You are instructed, gentlemen of the jury, that under the law every employe assumes the risk and hazard of injury resulting from the ordinary and obvious dangers incident to his employment. And you are instructed, gentlemen of the jury, if you believe from the evidence in this case that the injury to plaintiff was the result of mere accident and misfortune and a part of the risk and hazard incident to the duties to be performed by this plaintiff, and were occasioned without fault or negligence on the part of this defendant, your verdict should be for the defendant."

In said instruction the jury were advised that under the law every employe assumes the risk and hazard of injury resulting from the ordinary and obvious dangers incident to his employment.

"In a suit for personal injuries the question of whether or not defendant's negligence is the proximate cause of the injury sustained should be left to the jury, where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on the point. The question of proximate cause may be determined from circumstantial evidence." St. Louis & S. F. R. Co. v. Darnell, Adm'x, 42 Okla. 394, 141 Pac. 785.

Instruction No. 10 of the trial court reads as follows:

"You are instructed, gentlemen of the jury, that it is the duty of every man employed by another to use reasonable and ordinary care to prevent injury to himself from the open and obvious dangers incident to his employment. And you are instructed that, even though you should believe from the evidence in this case that the defendant was negligent in providing the place in which plaintiff was to work, yet, if you should further believe from the evidence that plaintiff failed to use reasonable and ordinary care to protect himslf from danger and hurt, your verdict should be for the defendant."

In said instruction the jury were again advised that it was the duty of every employe to use reasonable and ordinary care to prevent injury to himself from open and obvious dangers incident to his employment, and in said instruction the jury were further advised that, even though they should believe from the evidence that the defendant was negligent in providing a place in which plaintiff was to work, yet if they further believed that plaintiff failed to use reasonable and ordinary care to protect himself, their verdict should be for the defendant.

In this case the plaintiff had knowledge of the danger involved, had advised the de-

fendant thereof, and the defendant had promised the plaintiff to remedy the matters complained of. The plaintiff gave the names of the parties to whom complaint was made and the names of the officers who promised to make the corrections, and defendant failed to offer any testimony whatever denying that said promises were made nor even attempted to disprove the same. The instructions given by the court were correct and proper under the facts of the case.

Specification of error No. 7 is as follows:
"The court erred in giving instruction No. 3 of his charge to the jury."

And specification of error No. 9 is as follows:
"The court erred in giving instruction No. 7 of his charge to the jury."

We will consider these assignments of error together. Counsel states that in both instances the court places upon the defendant the following burden:

"* * * That it was the duty of the defendant railway company to use reasonable and ordinary care to provide a safe place. * * * "

And then he concludes his argument in the following language:

"We do not urge this as being reversible error in itself, but call it to the court's attention for its consideration in connection with the many other errors committed by the trial court. * * * "

Counsel thus seems to recognize the fact that no reversible error was committed by the court in giving said instruction, and we are also of the opinion that this instruction was proper under the issues and proofs in the case.

"It is next urged that the court erred in giving the following instructions: 'It was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, reasonably safe appliances and machinery with which to work, and a reasonably safe track over which the cars were to be hauled, and a failure to furnish such a place, appliances, and track, if there was such a failure, was negligence on the part of the defendant, and if the injuries complained of were the result of such failure, your verdict should be for the plaintiff, unless you shall find that he assumed the risk of injury on account of such failure.'

"It is insisted that this instruction places altogether too high a duty on the master; that all the master is required to do is to exercise ordinary or reasonable care and diligence to provide his servant with a reasonably safe place in which to work, with reasonably safe tools and implements with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants, and that this

instruction requires defendant to furnish a reasonably safe place to work, etc., and imposes upon the master an absolute duty in this respect, and does not give him the privilege of using ordinary and reasonable diligence in the furnishing of such place, tools, etc. The criticism offered to this instruction is unwarranted; and, while it is true that many of the cases go to the extent of saying that the master is bound to exercise reasonable care and diligence to provide his servant with a reasonably safe place in which to work, etc., as was said by Mr. Justice Williams in Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659, yet we do not think it was the intent of the court in that case to emphasize the necessity of the use of such language, or to overrule or criticize the holdings of Neeley v. S. W. Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; Coalgate v. Hurst, 25 Okla. 588, 107 Pac. 657; C., R. I. & P. Ry. Co. v. Wright (39 Okla. 84) 134 Pac. 427; Choctaw Elec. Co. v. Clark, 28 Okla. 399, 114 Pac. 730; or Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747.

"In the last-named case Commissioner Harrison's treatment of this question is so satisfactory that we feel it to be our plain duty to follow and approve the same. It follows. There is one other assignment which plaintiff in error urges at considerable length, which, in order to prevent its arising in a future trial, it might be well to settle here, viz., that the court erred in the following instruction: "You are instructed that, under the law, it is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools or appliances with which to work." It is contended by the plaintiff in error that this instruction is erroneous and vicious, in that it instructs the jury that the master must furnish a place reasonably safe, whereas his duty is only to use reasonable care in furnishing such a place. The materiality of this distinction has not been generally recognized by the courts. The two terms "reasonably safe place" and "reasonable care in providing a safe place," as a general rule, have been used interchangeably. Some of the standard text works use the term "reasonably safe place" as the adopted rule. Others use the two terms interchangeably. In 20 Am. & Eng. Enc. of Law (2d Ed.) 55, we find the following text supported by more than 200 decisions from 37 different states, and from the United States Supreme Court and the Courts of Canada and England, viz.: "In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty, of providing them with a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment; and the servant is entitled to rely upon the assumption that the master has performed the duty imposed on him by law, of providing a reasonably safe place to work." In 26 Cyc. 1097, the following rule is stated: "It is the positive duty of a master to furnish his servants with reasonably safe instrumentalities wherewith and place wherein to do his work, and, in the performance of these obligations imposed by law, it is essential that regard should be had, not only to the character of the work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed his duty." This rule is supported by decisions from 43 states and from the United States Supreme Court and the courts of England and Canada. Our own court in the case of McCabe & Steen Construction Co. v. Wilson, 17 Okla. 355, 87 Pac. 320, uses the two terms interchangeably, or treats the terms as having the same legal effect. In the course of the opinion the court quotes from Ruemmeli-Braun Co. v. Cahill, 14 Okla. 422, 79 Pac. 260, as follows: "It is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe materials to work on. * * *" And, after quoting the above language, the court says: "As above stated, it is now the fundamental and well-settled law of the land that it is the duty of the master to furnish the servant safe tools, materials, and structures to work with and upon, and to keep them in proper repair." In view of the overwhelming recognition of the interchangeable use of the terms "duty to provide a reasonably safe place" and "duty to exercise reasonable care in providing a safe place," we cannot be constrained to treat this objection of itself reversible. However, we believe the rule might be stated with more exact correctness by saying: It is the duty of the master to provide a servant with a reasonably safe place to work and reasonably safe tools and appliances with which to work, taking into consideration the nature and character of the work to be performed and the dangers and hazards ordinarily arising therefrom."

"In Choctaw Elec. Co. v. Clark, 28 Okla. 399, 114 Pac. 730, Mr. Justice (now Chief Justice) Hayes, speaking on this subject, said: 'It is well-settled doctrine that it is the duty of the master to furnish the servant or the employe a reasonably safe place in which to work, reasonably safe appliances with which to work, reasonably safe materials and reasonably competent fellow servants to work with; and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation."

"These authorities, to our minds, furnish a satisfactory answer to defendant's objection to the instruction given. Besides, no instruction was offered by defendant covering the objection urged, and it was the duty of defendant to submit to the court such an

instruction as in its opinion would have correctly stated the law.

"The objection urged against instruction No. 5 of the court's general charge cannot be sustained. It is charged that in this instruction the failure of the court to use the word 'reasonably' results in making the defendant the insurer of its servants, and that the positive duty is imposed on it to provide safe tools and place. This instruction, in our opinion, is a fair statement of the law on this phase of the case, and is not subject to the charge that the employer is thereby made the insurer of its servants. Read in connection with the balance of the court's general charge, it states in a fair manner the duties and requirements of both parties."

Great Western Coal & Coke Co. v. Malone, 39 Okla. 693, 136 Pac. 403.

Counsel for the defendant complains further of instruction No. 3 for the reason that it omits the defense of assumption of risk, and then cites authorities with reference to negligence and contributory negligence and concludes his argument with the following language:

"While our Supreme Court has not passed on the omission by the trial court of the defense of assumption of risk, yet, the omission of the sister defense to assumption of risk, 'contributory negligence,' having been passed on so clearly and unequivocally in the above case, it seems to us that this court must adopt the same rule concerning the omission of assumption of risk."

The court properly instructed separately with reference to assumption of risk.

" 'Assumption of risk' and 'contributory negligence' are not synonymous." Parks v. St. L. & S. R. Co., 178 Mo. 108, 77 S. W. 70, 101 Am. St. Rep. 425.

"The defenses of 'assumed risk' and 'contributory negligence' are separate and independent, the former arising out of contract relations, and the latter not." St. L., I. M. & S. Ry. Co. v. Brogan, 105 Ark. 533, 151 S. W. 699; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551.

"Assumed risks and contributory negligence are distinct doctrines of law." La. & Texas Lbr. Co. v. Brown, 50 Tex. Civ. App. 482, 109 S. W. 950; Chicago & E. R. Co. v. Ponn, 191 Fed. 682, 112 C. C. A. 228.

The authorities all hold that assumption of risk and contributory negligence are separate and distinct defenses; that they are separate and distinct doctrines of law; therefore we take it that the court was in keeping with the law in instructing separately with reference to such defenses.

The court also instructed the jury in instruction No. 13 as follows:

"You will take these instructions, considered as a whole, for the law of this case,

singling out no particular paragraph upon which to base your deliberation or verdict, but, looking to these instructions as a whole for the law of the case and the evidence as you have heard it detailed from the witness stand, arrive at your verdict. * * *"

We will consider specifications of error Nos. 5, 6, 8, and 10, together, discussing thereunder the instruction which the court refused to give and the instructions which the court did give. Said instructions are with reference to the release involved. Before discussing the authorities cited by counsel for the defendant, we shall state that they do not seem to be in point with the case at bar, for the reason that the release desired to be avoided in each particular case cited and discussed was alleged to have been executed through fraud and misrepresentation, while the release in the case at bar was alleged to have been executed, not only through fraud and misrepresentation, but by mistake. The question of mistake does not enter into any of the cases cited by counsel for defendant.

The first case relied upon by counsel for defendant is that of St. L. & S. F. R. Co. v. Chester, reported in 41 Okla. 369, 158 Pac. 150. The syllabus of said case reads in part as follows:

"This court will not hesitate to set aside and avoid a release from damages in a personal injury case, where same has been obtained through fraud or misrepresentations upon the part of the defendant which have misled the injured party into signing same."

In this case the plaintiff's arm had been amputated. The extent of his injury was fully known, and the only representations claimed to have been made by the agent were that the agent stated that plaintiff's right to recover was, to his mind, doubtful, and that he had been informed that plaintiff was drinking when hurt. We quote from the language of the court:

"No act of fraud is shown. The plaintiff merely says: 'I did not understand this legal document. I do not know the meaning of certain words, used,' such as 'settle,' 'apparent,' 'compromise.' * * * No claim is made that the release was falsely read, or only partially read, or that any improper influences were brought to bear to induce him to sign it."

The court further found that the statements made by the agent to the plaintiff were true. We quote further from the language of the court:

"These statements were both true. From this record the gravest doubt arises as to his right to recover. All the proof shows that he was drinking when hurt."

In the case of St. L. & S. F. R. Co. v.

Nichols, 39 Okla. 522, 136 Pac. 159, fraud was pleaded in order to avoid the release, and the evidence offered by the plaintiff was, in the opinion of the court, sufficient to justify the jury in avoiding same.

In the case of St. L. & S. F. R. Co. v. Reed, 37 Okla. 350, 132 Pac. 355, fraud was alleged and established in procuring the release. Mistake was not alleged, and no effort was made to establish mistake. We quote in part from the syllabus of said case:

"The gist of fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and, if this result is actually accomplished, the means of accomplishing it are immaterial."

We quote further from the language of the court at page 355, of 37 Okla., at page 357 of 132 Pac.

"In this case the physician had superior knowledge of the subject-matter under discussion. The plaintiff, as shown by the evidence, was an ignorant woman and did not have such knowledge. Therefore his expression of an opinion which he did not entertain, because it was contrary to the facts, was such a misrepresentation as would warrant the cancellation of the release secured by reason thereof. We are of the opinion that the able and well-reasoned opinion by Justice Dunn in St. L. & S. F. R. Co. v. Richards, 23 Okla. 256 (102 Pac. 92, 23 L. R. A. [N. S.] 1032), is controlling authority on every question in the instant case, except, perhaps, the last one above mentioned, i. e., that the expressions of the physician were not representations, but merely statements of an opinion, and therefore not grounds to cancel the release on the grounds of fraud; but with this view, as hereinabove indicated, we do not agree."

None of the cases above referred to are authority on the question in the instant case, i. e., the question of mistake.

The case of St. L. & S. F. R. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, does not pass upon the right of a party to disaffirm a release executed through mistake. The following authorities are in point with the instructions which the court did give and sustain the court in refusing to give the instructions requested:

"An innocent misrepresentation by the releasee of a material fact intended to be acted upon by the releasor and relied upon by him is as effective to avoid a release induced thereby as a mutual mistake." 34 Cyc. 1059; Shackelford v. Hendley, 1 A. K. Marsh. (Ky.) 496, 10 Am. Dec. 753; Peoples' Natural Gas Co. v. Millbury, 2 Monag. (Pa.) 145.

"A release of damages for a broken arm, executed by a railroad employe in reliance upon a false statement of a physician, acting as a representative of the company, and made for the purpose of inducing the execution of such release, that the bones of the arm had knitted together, and that the arm would be as good as ever, was not binding upon the employe, even though such statement were made in good faith." Houston & T. C. Ry. Co. v. Brown (Tex. Civ. App.) 69 S. W. 651.

We quote from the language of the court in the above case:

"It is true this statement may have been predicated upon his opinion as a medical expert, but the opinion is based upon facts of which he possessed knowledge. The fact that the statement made by Stewart was not intentionally false does not affect the right of the appellee to have the release set aside if he was misled by the statement and executed the release believing the statement was true. In such a case innocent misrepresentation may as well be the basis of relief as where such statements are intentionally false."

"Complainant, while a passenger on defendant's railroad, was thrown down in a car, and her hip was fractured. She was attended by her own physician, who was also defendant's local physician. A week after the injury she was visited by the physician and a claim agent of defendant, and a settlement was made of her claim for damages against defendant, and she signed a release. She was then 65 years old, by occupation a nurse, and dependent on her earnings for support. The principal question with her in making the settlement was the length of time the injury would incapacitate her from following her employment, and she was led to believe from the statements made by the agent and the opinion given by the physician that it would not exceed a year, and the settlement was made on that basis. In fact, she did not recover the use of her limb, and was permanently incapacitated from following her occupation. Held, that she was entitled to a rescission of the contract of settlement on the ground of mistake, and to a cancellation of the release, conceding that all parties acted in good faith."

See, also, Wilcox v. Chicago & N. W. Ry. Co. (C. C.) 111 Fed. 435.

"Plaintiff, a railroad brakeman, after being injured, was solicited by defendant's claim agent to make a settlement, and went with him to the office of defendant's physician, who, after an examination, either through mistake or to deceive complainant, minimized his injuries, and stated that he would be able to work in a week or two, whereupon plaintiff, without other advice, was induced to sign a release of all damages and demands on account of his injuries, in consideration of payment of doctor's and nurse's bills and his wages for such period of time. It developed, however, that plaintiff was seriously injured, requiring a subsequent hazardous and delicate surgical operation on the skull, and that he would probably never be able to resume his avocation. Held, that the release was

9—60

executed by mutual mistake of the parties, and was subject to vacation." Great Northern Ry. Co. v. Fowler, 136 Fed. 118, 69 C. C. A. 106.

It does not appear that the plaintiff in this case was anxious for a settlement for mercenary purposes. His prime object seems to have been that he might be able to perform labor. He did not ask of the defendant anything more than a $1 release and the privilege of going to work. He was advised by Mr. Sharp, one of the officers of the company, to go to Mr. Brady, the claim agent. He was advised by Mr. Brady, the claim agent, that the physicians of the company had reported the injury as merely a skin wound, and that it was not permanent. He was advised by Dr. Tye and Dr. Border, physicians of the company, that the injury was merely a skin wound, and not permanent. He was advised by Dr. Tye that he would have a good leg and would be able to perform labor to the extent and in the capacity he did prior to the injury. The plaintiff was a mere employee of the company. He had no knowledge of medical science. He could not judge the effect of a burn as to its permanency or its temporary character. He relied upon the statements of the company's physicians to the effect that he would have a good leg, and, believing and relying upon such statements, executed the release in question.

The plaintiff was injured on December 10, 1910, and executed a release shortly after he was out of the hospital on February 15, 1911. Practically three months thereafter his leg was still bad, and he was unable to perform manual labor as he could and did prior to the injury, and on February 21, 1912, an action was instituted against the defendant. A trial was had on November 14, 1913, practically three years after the date of the injury, and even at that time plaintiff had not recovered and was unable to earn the wages and perform the labor which he had prior to the injury. The injury was exhibited to the jury, and it was established by competent testimony that the injury was permanent and lasting. The statements and representations of the claim agent and the company's physicians were not true. The plaintiff had relied upon the truthfulness of such statements, and had executed in reliance thereon a general release for the consideration of $1. Under the law and facts of the case as we understand them, the court properly refused the instructions requested by counsel, and correctly gave the instructions objected to by counsel.

In the light of what we have said here, and after a most careful and thorough ex-amination of the record and briefs in this cause, we find no reversible error in the record, and therefore sustain the action of the trial court herein, and affirm the judgment, with directions to the trial court to credit the one dollar thereon paid by defendant to plaintiff for the release, and which plaintiff testified under oath, upon the trial, he was willing to have credited upon any judgment which he might recover in the action.

By the Court: It is so ordered.